### COOK *against* SWAN.

On the 15th of *July,* 1820, *A.* executed to *B.,* his father, a bond, in the penal sum of 10,000 dollars, to pay all the debts of *B.,* amounting, according to his representation, to 1000 dollars, to support him and his wife and an infirm son, during their lives, and to pay to each of two other children 100 dollars ; in consideration of which, *B.* executed to *A.* a deed of all his real estate, consisting of a farm of 280 acres ; and to secure the performance of the condition of his bond, *A.,* on the same day, mortgaged back to *B.* 160 acres of the same land. *A.* having paid 1500 dollars of *B.'s* debts, and discovering that they amounted to 1500 dollars more, applied to *B.* for a rescission of their contract ; and it was rescinded accordingly, and releases were executed, by the parties respectively. A schedule of the debts paid by *A.* for *B.,* and due from *B.* to *A.,* being first made, *B.,* on the 8th of *January,* 1821, executed a mortgage to *A.,* to secure the amount. Held, that these transactions afforded no evidence, that the last-mentioned mortgage was fraudulent as against creditors.

In a case where the question was, whether a mortgage deed, given to the defendant, to secure him for certain advancements made by him for the mortgagor, was fraudulent as against creditors, after the defendant had adduced evidence of such advancements, the plaintiff offered evidence to prove, that the defendant, at the time of the transaction, was a young man, and had recently commenced business destitute of capital, and hence was not of ability to make such advancements. Held, that the last-mentioned evidence was inadmissible.

Where the defendant, a mortgagee, claimed to have paid the debts of the mortgagor, to a certain amount, as the consideration of the mortgage deed ; the plaintiff resisted such claim, and adduced evidence to prove, that large sums of money had been received by the defendant, which had not been credited or accounted for ; the defendant claimed, that all such sums had been duly accounted for, by credits given in a settlement with the mortgagor ; in proof of which,

he offered in court his books, purporting to be settled and signed by the parties; it was held, that such books were admissible.

The mere declarations of a mortgagor, made before the execution of the mortgage deed, in the presence of strangers, relative to his indebtedness to the mortgagee on a settlement between them, are not evidence, in a suit to which the morgagor is not party or privy, in support of the mortgagee's title.

But where the question was, whether there was a settlement between the parties to a mortgage deed, at the time of its execution, and what was the result of it, the declarations of the mortgagor, before the execution of the deed, made in the presence of the mortgagee, while they were apparently in the act of settlement, with the books before them, relative to such settlement and result, were held to be admissible as part of the *res gesta.*

*New-London,*
*July,*
1823.

Cook
*v.*
Swan.

This was an action of ejectment, tried, on the general issue, at *Norwich, January* term, 1823, before *Brainard, J.*

The plaintiff claimed title, by virtue of the levy of an execution in his favour against *Nathan Swan,* father of the defendant. The defendant claimed title, by virtue of a mortgage deed from *Nathan Swan* to him, dated the 8th of *January,* 1821. This deed the plaintiff claimed was fraudulent and void, having been executed for the purpose of defeating creditors of their just debts. It was proved, that for several years prior to the 15th of *July,* 1820, *Nathan Swan* was owner of a farm consisting of about 280 acres ; that, on that day, the defendant bound himself to him, in the penal sum of 10,000 dollars, to pay all his debts, to support him and his wife and an infirm son, during their lives, and to pay to two of his other children the sum of 100 dollars each ; that, in consideration thereof, *Nathan Swan* then executed to the defendant a deed of all his real estate ; and that to secure the performance of the condition of the bond, the defendant, on the same day, executed to him a mortgage deed of 160 acres, part of said real estate. To explain and rebut this evidence, the defendant introduced evidence to shew, and claimed to have proved, that at the time of the execution of the deed from *Nathan Swan* to the defendant, and of the bond from the defendant to him, he represented his debts not to exceed 1000 dollars ; that in pursuance of said arrangement, the defendant paid and assumed of his father's debts to the amount of 1500 dollars ; that discovering that there were other debts outstanding to the amount of 1500 dollars, besides debts claimed by the defendant to be due to him, in all more than the value of the estate conveyed to him, he afterwards applied to said *Nathan* to release him from his contract, and said *Nathan* released him accordingly ; that thereupon the defendant released to said *Nathan* said estate, and by the advice of

counsel, made a schedule of debts paid by the defendant for said *Nathan*, and due from said *Nathan* to the defendant, amounting, as he claimed, to 3,035 dollars, for which the mortgage in question, was executed.

The plaintiff offered evidence to prove, that on said 8th of *January*, 1821, when the mortgage was executed, said *Nathan* was not indebted to the defendant in the amount claimed; that sundry large sums of money, and articles of personal estate had been received, by the defendant, of his father, for which credit had been fraudulently omitted to be given; particularly, a sum of money received by the defendant of *John Wheeler*, for which said *Nathan* had given security. The defendant, to account for this money, exhibited the security, which he had given his father for it; and claimed, that it was sufficiently accounted for. To shew that it was credited in account with his father, the defendant offered in court his books, purporting to be settled and signed by the parties; to which the plaintiff objected; and the judge sustained the objection, and ruled out the books.

To shew that the accounts between the parties, before the execution of the mortgage deed, had been settled, the defendant then offered one *Tift* and others, to prove, that previous to the execution of the mortgage deed, said *Nathan*, the grantor, had said, in the presence of witnesses, that more than 3000 dollars was due from him to *Cyrus*, (the defendant) and claimed, that inasmuch as said *Nathan* had executed a deed with covenants of warranty, and so could not be a witness, his declarations, made before the execution of said note and deed, were, in relation to said settlement, admissible evidence; but the defendant did not offer the said *Nathan* as a witness. The plaintiff objected to the admission of any declarations of said *Nathan* as evidence. The court admitted witnesses to testify what was said by said *Nathan*, before the execution of the deed, in relation to that settlement, in the presence of his son, while they were apparently in the act of settlement, with the books before them; and what was said by him, also, in the presence of his son, on the result, as he then stated. The witnesses testified, that said *Nathan* and *Cyrus* were together, on the evening of the 7th and morning of the 8th of *January*, 1821, before the exetion of the mortgage deed, engaged in the examination of accounts, as it appeared to them, with books of accounts before them. Whether said *Nathan* had any account book, the witnesses could not say. They continued to be employed in this

business until late in the evening ; when the witnesses retired ; and on their return, in the morning, they found them apparently in the same employment, with account books before them. Soon afterwards, they appeared to have closed the business ; and said *Nathan* said, "We have settled ; and I owe *Cyrus* over 3000 dollars." This was objected to, by the plaintiff ; but the court admitted it.

The plaintiff, in further support of the issue on his part, offered in evidence a deed from said *Nathan* to the defendant, dated the 13th of *November*, 1820, releasing all his right and title to 160 acres, part of the land which was mortgaged to secure the fulfilment of the condition of said bond ; to the admission of which the defendant objected, on the ground that it was a distinct and separate transaction. The court sustained the objection, and ruled out the deed.

The defendant having given evidence to prove, that he had made payment to his father, and for debts of his father, to the amount of the mortgage ; the plaintiff offered to prove, that the defendant was a young man ; that when he began his business, a few years before, he was destitute of capital, and was not able to make the advancements claimed. To the admission of this evidence the defendant objected, on the ground that such enquiry was too remote, and would be irrelevant. The court rejected the evidence.

The defendant obtained a verdict ; and the plaintiff moved for a new trial.

*Goddard*, in support of the motion.

*Cleaveland* and *Gurley*, contra.

Hosmer, Ch. J. The plaintiff claims tittle to the premises demanded, by the levy of an execution upon it, as being the estate of *Nathan Swan ;* and the defendant, by a mortgage deed, from the said *Nathan,* dated the 8th day of *January,* 1821. This deed, it is insisted, by the plaintiff, was fraudulent, having been executed, by the grantor, for the purpose of defeating creditors of their just debts. Whether the above deed was fraudulent, is the material question in the case.

On the 15th of *July*, 1820, *Nathan Swan,* being largely indebted, having received from his son, the defendant, a bond and mortgage, conditioned to pay his debts, to support him and his wife, and an infirm child, during their lives, and to pay certain

sums to other children, executed to the defendant a deed of all his real estate. Having paid fifteen hundred dollars, which exceeded, by a third, all the debts of the said *Nathan*, as he had represented them, and discovering that the demands still outstanding, were fifteen hundred dollars more, the defendant applied to his father, for a rescission of their contract; and it was rescinded accordingly. These facts appearing on the motion, do not evince a fraud on creditors; or if in this is their character, it is of no importance in this case. The fraud, if any, was vacated, by the parties, and every thing put in *statu quo*; nor can an inference be deduced from them, that a fraud exists, in a contract made in the year 1821, because an agreement, entered into six months before, was fraudulent. *Clark* v. *Johnson*, 5 *Day*, 379. This transaction, and the release to the defendant, by *Nathan Swan*, in *November*, 1820, of his right and title to an hundred and sixty acres of land, part of the land which was mortgaged, to secure the fulfilment of the bond aforesaid, (which land was reconveyed to the grantor, at the rescission of the contract, as before-mentioned,) have no bearing on the question of fraud, arising on a posterior proceeding. It was prior, distinct from, and wholly unconnected with, the matter now in question; and the leaven, if any existed, had been purged, by the voluntary act of the parties.

The evidence offered to prove, that the defendant was a young man, when he received the deed from his father, destitute of capital, a few years before, and hence, not of ability to make the advancements claimed, was rightly repelled by the court. Such an enquiry would be remote, interminable, the basis only of conjecture, and leading to no correct inference. The ways of getting, as well as of losing property, are infinite.

Having disposed of these objections to the judgment below, I am brought to a consideration of the only material point of enquiry. The defendant claims, as the consideration of the deed of *January*, 1821, now in question, that he had paid his father's debts, to the amount of 3,035 dollars. The plaintiff having exhibited evidence, tending to prove, that when said deed was given, *Nathan Swan* did not owe his son, the sum claimed by him; that all his personal estate had been transferred to the defendant; and that other large sums had been received by him, and neither credited, nor accounted for, particularly a sum of money, of one *John Wheeler*; the said *Cyrus* takes on himself, the refutation of this testimony. He claimed, that all the above sums of money had been duly accounted, for

by having been credited in a settlement made with his father. In proof of this position, he offered in court his books, purporting to be settled and signed by the parties; to the admission of which, the plaintiff objected, and the court disallowed the testimony. That this account did not purport a settlement, made before the execution of the deed under enquiry, was not a question in the court below; and ought not, for the first time, to be questioned here. Besides, from the testimony of *Tift* and others, which will, by and by, more particularly be adverted to, there is a reasonable presumption, that the account between the parties was settled. The books, in my opinion, ought to have been admitted in evidence, and the jury left to determine upon the settlement of the parties, and the fairness of the transaction. The plaintiff, however, on whose objections the evidence was repelled, cannot be allowed a new trial, upon this ground, as the determination was in his favour.

Having failed in the proposed exhibition of his books, the defendant next offered to prove a settlement of the accounts between him and his father, in a different manner. This part of the statement, comprising the most material controversy in the case, I will give in the words of the motion. "The defendant, then, to shew, that the accounts between the parties, before said note and mortgage were executed, had been settled, offered *Tift* and others, to prove, that previous to the execution of said mortgage deed, the said *Nathan*, the grantor, had said, in the presence of witnesses, that more than 3000 dollars was due from him to *Cyrus;* and did claim, that inasmuch as the said *Nathan* had executed a deed with covenants of warranty, and so could not be a witness, his declarations made before the execution of said note and deed, were, in relation to said settlement, admissible evidence; but the defendant did not offer the said *Nathan* as a witness." The offered evidence was correctly adjudged, by the court, to be inadmissible. *Nathan Swan* was a legal witness, as the validity of his covenant was not involved, in the question of fraud under discussion. *Giddings* v. *Canfield*, 4 *Conn. Rep.* 482. And the declarations by him made, anterior to the deed, were mere hearsay, and not competent evidence. *Bridge* v. *Eggleston*, 14 *Mass. Rep.* 245.

In this opinion, I understand the court to be unanimous.

The motion then proceeds, and states, "that the court admitted witnesses, to testify what was said by *Nathan*, the father and grantor, before the execution of the deed, in relation to that settlement, in the presence of the son, *and while apparently in*

the act of settlement, with the books before them ; and what was said by him, in presence of his son, on the result, as he then stated. The witnesses swore, that the said *Nathan* and *Cyrus* were together, on the evening of the 7th and morning of the 8th of January, 1821, before the execution of said deed of mortgage, engaged in the examination of accounts, as appeared to them, with a book or books of accounts before them. Whether *Nathan* had any account book, they could not say ; but they continued to be employed in this business, until late in the evening, when the witnesses retired, and on return, in the morning, found them apparently in the same employment, with account books before them ; that *soon after, they appeared to have closed their business ; and Nathan, the father, said, " We have settled, and I owe Cyrus over* 3000 *dollars."* This testimony was objected to, but was admitted. It becomes necessary to ascertain, precisely, the nature and effect of the preceding declaration made by *Nathan Swan* ; and to accomplish this, I am aware but of one mode, and that is, to construe the motion pursuant to the popular signification of its terms, taking them all to form an united whole. It has been urged, that the declaration made by *Nathan Swan*, was the result of the settlement,—*the concluding act*, ascertaining merely the state of the indebtedness. If this observation is supported by the motion, I think the admission of the evidence, was free from exception. (*Knowles* & al. v. *Michel* & al. 13 *East* 249.) But I consider it as not warranted by the facts stated. The parties had been comparing their accounts ; and, as the witnesses testify, " soon after they appeared to have closed the business, *Nathan*, the father, said " we *have* s*ettled*, and I owe *Cyrus over* 3000 dollars." Now, this was not the final act of a settlement, striking a balance, for several reasons. In the first place, the settlement had been made before, and " the business closed." Secondly, the declaration was made *soon after* the settlement ; from the indefiniteness of which phraseology, it is clear, that it might have been, ten, twenty or thirty minutes subsequent, all of which facts would be consistent with the testimony. But it is sufficient to say, that the witnesses assert it to have been *after.* Thirdly, the expression " we *have settled*," is not only gramatically, but according to the usual forms of speech, the declaration of an *anterior* event. And what is conclusive ; the words of *Nathan* could not be the result of the settlement, which, undoubtedly, was as certain as figures could make it, but the declaration of an antecedent result ; for the balance ascertain-

ed is not given.    The expression, that the sum due was *over* 3000 dollars, decisively evinces, that the speaker was giving information of a preceding event, which had been reduced to perfect certainty, but of which, giving information to those around him, he thought it unnecessary to be precisely particular.    And in addition, it may be remarked, that where accounts are compared and adjusted, the state of them appears upon their face ; and the promulgation of the result orally, except information of a preexisting fact, is contradictory to all good sense and experience.    If then the words of *Nathan Swan,* were *after* the settlement, it is immaterial, whether the period were longer or shorter ; the legal result must be the same.

It has been contended, that the declaration, on which I am commenting, is part of the *res gesta* ;  and, therefore, admissible.    I enquire of what *res gesta?*  Or, to speak in plain *English,* of *what thing done?*  The reply must be, of the *settlement of accounts;* and to this a sufficient answer has already been given.    I insist, that the *res gesta,* or the settlement, was entirely anterior to the anouncement of it, in general terms, by one of the parties.    Where it is necessary to enquire into the nature of a particular act, and the intention of the person who did the act, what the person said, at the time of doing it, is admissible evidence, for the purpose of showing its true character; and this is the meaning of the expression *part of the res gesta.*  1 *Phil. Ev.* 201.    Thus, the declarations of a bankrupt, at the time of absenting himself, are received in evidence, to show the motive of his absence ; and the expressions of a person, who extends his hand to another, with money in it, to evince, that it was a tender.    But the character of a settlement is known from an inspection of the accounts stated, and not from the posterior declaration of one of the parties.

The result, to which my mind is inevitably impelled, in this case, is, that a settlement had been accomplished, and was announced, by *Nathan Swan,* not as being the result, necessary to be made known, or as having any connexion with the act done, but merely because it was his pleasure to give the information. I admit, that motions are not to be construed like special pleadings; but when they give the words, or the force of testimony, they must receive the same exposition, as the words would be subject to, if spoken; and this rule being rejected, the motion is not construed at all.

It has been said, that an *insimul computasset* might be sustained on the declaration of *Nathan ;* and, undoubtedly, it might,

*New-London,* even if the expression had been a year subsequent to the settle-
*July,*
*1823.* ment. But this remark has no force, when the objection of
hearsay, is made, by a third person; and the suit is neither for
Cook
*v.* nor against the party speaking. My brethren see the subject
Swan. in a different light; and, perhaps, with more correctness, than
I have done; but prompted by every wish to harmonize with
them, on this subject, my mind is strongly opposed to such a re-
sult. The proceeding between the father and son, has too
much the appearance of an endeavour to secure his property, in
trust, for the benefit of his declining years; and this appearance
is not changed for the better, by his not having been produced
as a witness. He could have given certainty, to what is now
matter of doubt, by testifying to a settlement, if one existed,
and of the items, which composed it. I am unwilling to re-
ceive evidence, which, at best, is of an inferior kind, and liable
to great exceptions, when the best evidence of which the case
admits, is within the defendant's power, and not produced.

I would grant a new trial.

PETERS, J. I concur with the Chief Justice in thinking, that
the transactions between *Nathan Swan* and the defendant, prior
to the contract in question, do not evince fraud on creditors.
If they have any bearing on the case, they prove, that the deed
was not given without consideration. I also concur in the opin-
ion, that the testimony offered to prove, that the defendant was
a young man destitute of property, was properly rejected; and
that the court erred in rejecting the defendant's books, purport-
ing to be settled and subscribed by the parties, which afforded
a reasonable presumption that the accounts between them were
adjusted.

But the plaintiff, having induced the court to reject the best
evidence the nature of the case admitted of, now complains,
that inferior evidence was received, *viz.* the declarations of the
grantor, in the presence of the grantee, at the time and place
of making the grant, on the ground that the grantor might have
been called as a witness. Whether he was competent or not,
it is unnecessary to decide. He certainly was not compellible
to testify. *Benjamin* & al. v. *Hathaway,* 3 *Conn. Rep.* 528.
*Stat. p.* 247, 8. *tit.* 40. *s.* 2. He was under no obligation to
volunteer; nor was the defendant bound to call him. The
*onus probandi* was on the plaintiff. He was bound to prove ac-
tual fraud in the grantor, and a participation therein by the de-
fendant; for guilt is never to be presumed. *Bridge* v. *Eggles-*

ton, 14 *Mass. Rep.* 245. 250. Such declarations are always received as will tend to prove a grant *bona fide* or *mala fide*— not as mere declarations or hearsay—but as part of the *res gesta*. *Swift's Ev.* 129. *Bridge* v. *Eggleston*, 14 *Mass. Rep.* 245. But, it has been gravely asked, by the plaintiff's counsel, of what *res gesta?* My answer is, the settlement made and making between the parties, and the consideration of the deed. Of the numerous *signs* and *marks* of fraud mentioned in the books, (see *Twyne's* case, 3 *Co. Rep.* 80. *b.*) not one appears in the motion. The grant was not general, but of part only of the grantor's land. The grantor did not continue in possession. The deed was not made in secret. The consideration was truly expressed. A schedule thereof was made, and the items entered on book adjusted, and subscribed by the parties, in the usual manner, and the result openly declared. There appears no trust between the parties. The deed contained no unusual clauses; but was given, by a father, to a son, to indemnify him for injuries sustained, by undertaking to pay his father's debts.

I do not advise a new trial.

BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.