## DWIGHT and others *against* BROWN and others.

On a bill in chancery, brought by *A., B.* and *C.,* creditors of *D.* against *D.* and his sons *E., F.* and *G.,* charging them with a fraudulent conspiracy to withdraw the property of *D.* from the plaintiffs' reach, by means of notes given by *D.* to *E., F.* and *G.,* and suits by attachment brought thereon, and *praying for an injunction against such suits and proceedings ; it was held,*

1. That to prove the claim of *A.* and *B.,* who were partners in trade, against *D.,* the acknowledgment of *D.,* that he owed *A.,* and had given him security, was admissible evidence, there being no claim of any debt due to *A.* individually ;

2. That to prove the debt of *C.* against *D.* for the board of one of *D's* workmen in a manufactory owned by him, testimony shewing that *D.* procured and paid for the board of other persons in his service in the manufactory, and that such was his ordinary course of business relative to those so employed, was admissible, as affording satisfactory presumptive evidence that the board supplied by *C.* was by the procurement of *D.* ;

3. That to prove the consideration and validity of the notes given by *D.* to the other defendants, *D.* was an incompetent witness for them, he being a party to the suit, interested in the costs and the person principally concerned in the conspiracy alleged ;

4. That to prove the consideration and validity of the notes given by *D.* to

*Windham,*
*July, 1831.*

Dwight
*v.*
Brown.

*F.* and *G., E.* was an incompetent witness, although he had previously withdrawn the suit commenced by him against *D.* ;

5. That to prove the consideration and validity of the note given by *D.* to *F.*, the original account books of *D.*, kept by himself and his sons alone, with regular entries therein, from week to week, to the credit of *F.*, for services performed, and charges against him for supplies received, made at the times they respectively purported to bear date, and before the existence of any conspiracy to defraud creditors, with settlements at different times, and the balance due to. *F.* carried to new account, and this course continued until the account was finally balanced by the note in question, were admissible evidence, although none of such settlements were subscribed by either of the parties.

THIS was a bill in chancery, stating, That on the 19th of *June* 1829, *Thomas Brown* was indebted to the plaintiffs, severally, in divers sums of money particularly specified ; that with intent to hinder, delay and defraud them, and to prevent the payment and collection of their debts, and to place his property out of the reach of legal process, and preserve it for his own use, he then combined and conspired with his sons *Thomas A. Brown, Owen Brown,* and *Fenner Brown,* to give them promissory notes, and procure writs of attachment, and obtain judgments and executions thereon, and cause said property to be sold, describing the notes, writs and proceedings particularly ; that in pursuance of such combination and conspiracy, notes were given and suits thereon were commenced, by attaching said property, which were still pending, particularly describing such notes, suits and process ; and praying for an injuction against them.    *Thomas Brown* and his sons were the party defendants.

On the hearing before the superior court, at *Brooklyn, October term,* 1830, (*Williams,* J. sitting,) the note of *Thomas Brown* to *Fenner Brown,* on which a suit had been brought and was then pending, having been given in evidence ; and it having been proved, that from *April* 1825 to the time of his failure, in *June* 1828, *Thomas Brown,* had been in business as a merchant and had been carrying on a cotton manufactory in *Thompson ;* and that *Fenner Brown,* during this period, had been in his father's service in the manufactory, and had boarded for him divers of his workmen, *Fenner* claiming that said note was given for his services, and the board of the workmen, and for money loaned ; the plaintiffs, also, on their part, for the purpose of showing, that nothing could be due from *Thomas* to *Fenner,* having offered evidence to show, that *Fenner* had received, during the same period, supplies from his

father's store; the defendants, to prove the consideration of <span style="float:right"></span> said note, offered in evidence *Thomas Brown's* original books of accounts, consisting of day-books, journals and ledger, which, they claimed, were regularly kept, commencing in the *Spring* of the year 1825, and containing his business transactions both in his store and manufactory, during the period above specified, and among others, his account with *Fenner*, with regular entries from week to week to his credit for services performed, and charges against him for the supplies received by him from the store, made at the times they respectively purported to bear date. This account, as the defendants claimed, appeared to have been, at different times, adjusted and settled, and the balance found due to *Fenner*, carried to his credit in new account; and this course was continued until the account was balanced, by the note in question. None of the settlements, however, were subscribed, by either of the parties; and the only book-keepers of *Thomas Brown*, during this period, were himself and his sons. The plaintiffs offered no evidence of any conspiracy between the defendants, prior to said 19th day of *June*, unless it could be inferred from what took place on that day and subsequently. Under these circumstances, the plaintiffs objected to the admission of said books of account; and the court rejected them.

To prove the consideration and validity of the several debts claimed to be due from *Thomas Brown* to the other defendants, they offered his deposition; to the admission of which the plaintiffs objected; and the court rejected it.

To prove the consideration and validity of the several notes of *Fenner Brown* and *Owen Brown* against their father *Thomas Brown*, they offered the deposition of *Thomas A. Brown*, one of the defendants; the suits brought by him on his notes against *Thomas Brown* having been withdrawn before the taking of such deposition. On the objection of the plaintiffs to its admission, the court rejected it.

To prove the debt claimed to be due from *Thomas Brown* to *A.* and *C. Steere*, traders in company under that firm, being two of the plaintiffs, as stated in the bill, the plaintiffs offered testimony to prove, that *Thomas Brown*, after his failure, had said, that he owed Mr. *Steere*, and had made over to him the lease of his manufactory for his security. To the admission of this testimony the defendants objected; but the court admitted it.

*Windham,*
*July, 1831.*

*Dwight*
*v.*
*Brown.*

The defendants other than *Thomas Brown*, then objected to the admission of this testimony as evidence *against them* to postpone their demands to the claims of *A.* and *C. Steere ;* but the court admitted it against all the defendants as evidence of the existence of the debt in question.

For the purpose of proving a debt due from *Thomas Brown* to *Sessions*, one of the plaintiffs, as stated in the bill, the plaintiffs, having given evidence to prove, that a blacksmith in the service of *Thomas Brown*, in his manufactory, had boarded with *Sessions* during the time he laboured in the manufactory, offered to prove, by the testimony of sundry witnesses, that *Thomas Brown* procured to be boarded, and paid for the board of divers other persons in his service in the manufactory ; and that such was his ordinary course of business relative to those employed in his manufactory. To the admission of this evidence the defendants objected ; but the court admitted it.

The plaintiffs having obtained a decree in their favour, the defendants moved for a new trial, on the ground that the several decisions of the court above-mentioned regarding the admission of evidence, were erroneous.

*H. Strong*, in support of the motion, contended, 1. That the defendants were entitled to the testimony of *Thomas Brown ;* he not being called upon to make any answer to the bill, and no relief being sought against him. In *England*, if he were made a party, his answer would be of course required, and would, therefore, be evidence. 2 *Madd. Chan.* 315. 316. 332. Mayor of *Colchester* v. ——, 1 *P. Wms.* 595. *Piddock* v *Brown* & *al.* 3 *P. Wms.* 288.

2. That the deposition of *Thomas A. Brown* should have been admitted. In the first place, he had ceased to have any interest in the fund, at the time when his testimony was offered ; having previously withdrawn his suits, and consequently relinquished his lien by attachment. Secondly, the debts of *Fenner* and *Owen Brown* were separate and distinct from those of *Thomas A. Brown ;* and there was no reason or propriety in their being joined with him : consequently, they ought not, by reason of this joinder, to be deprived of his testimony.

3. That *Fenner Brown* was entitled to the evidence resulting from the original account books of *Thomas Brown* to shew the indebtedness of the latter to the former. *Cook* v. *Swan*, 5 *Conn. Rep.* 140.

4. That the declaration of *Thomas Brown*, that he owed Mr. *Steere* and had given him security, was not evidence to prove a debt due from him to *A. & C. Steere.* In the first place, it did not conduce to prove a debt due to the partnership. Secondly, as against the other defendants, this was but *hearsay* evidence ; and by it their debts should not be postponed.

5. That the course of *Thomas Brown's* dealing with other persons, was no evidence of what his agreement was with *Sessions :* it was *res inter alios acta.*

*Goddard,* contra, contended, 1. That *Thomas Brown,* one of the defendants, was not an admissible witness for his co-defendants. In the first place, the cases cited in 2 *Madd. Chan.* 316. are not inconsistent with this position. Co-defendants are admitted, in *England,* by a peculiar practice of taking testimony *saving just exceptions ;* and it is received or rejected eventually, according to the absence or presence of interest in the witness ;—in analogy to the practice in a court of law to strike out a defendant, if the court perceive that he was made a party to prevent his being a witness. But our courts of chancery have never adopted any practice, by which a defendant, while he remains a party, may be a witness for his co-defendants. Secondly, *Thomas Brown* was charged in the bill with a fraudulent conspiracy to withdraw his property out of the jurisdiction and prevent its being exposed to the plaintiffs' claims. Here was the foundation of a decree against him. He might be enjoined not to do this. Thirdly, *Thomas Brown,* as a fraudulent conspirator, was liable for costs.

2. That the testimony of *Thomas A. Brown* was inadmissible ; and for similar reasons. He was a party to the fraud and a party to the suit, and was liable for costs. Though he had withdrawn his suits, the purposes for which the conspiracy was formed, might still be accomplished.

3. That the account books of *Thomas Brown* were not evidence for the defendants. These books alone were offered to prove the validity of the note given to *Fenner Brown,* and to disprove the allegations of the bill ; and this, while *Thomas Brown* was living and a party. This claim has neither principle nor authority to support it. 1 *Phill. Ev.* 184, 5. *Cooper* v. *Marsden,* 1 *Esp. Rep.* 1 *Bul. N. P.* 282.

4. That the declaration of *Thomas Brown* regarding his indebtedness to *A.* and *C. Steere,* was admissible to prove the

debt claimed by them ; *Brown* being a party. That the expression " Mr. *Steere*" was used, instead of the partnership name, is of no importance, provided a partnership debt was referred to ; and of this the jury were competent judges. The evidence was not necessarily irrelevant. It was not claimed, at the trial, that this conversation did not relate to a partnership debt ; or that one of the partners had a private debt ; but the objection is made here, for the first time. A new trial, therefore, will not be granted on this ground.

**5.** That the course of business in the manufactory, afforded presumptive evidence of *Thomas Brown's* indebtedness to *Sessions,* who had boarded one of the workmen, and was admissible, on the same ground that the usage of trade is resorted to, in other cases.

HOSMER, Ch. J.    In this case several objections have been made to the determination of the superior court, which excite no difficulty.

Of this description are those, which relate to two of the plaintiffs.

The declaration of *Thomas Brown* that he owed *A. Steere* and had made to him a lease of the manufactory, was good evidence, under the circumstances of the case, to show, that he was indebted to *A. & C. Steere,* who, under this firm, were traders in company.    The debt from *Brown* was charged on book, by the company ; nor has it been suggested in proof, that he owed *A. Steere* individually.    *A. Steere* was an inhabitant of *Providence,* and *C. Steere* of *Thompson,* where *Brown* dwelt, and the partnership store was kept.    *Prima facie,* it was the obvious intention of *Brown,* to acknowledge the partnership debt.—that is, the alone existing debt,—naming the principal partner only, at the time of the recognition.

*Sessions,* another of the plaintiffs, boarded a blacksmith, who was in the service of *Thomas Brown,* at his manufactory ; and the proof that *Brown* procured the board of his workmen at various places, and paid for their board, and that such was his general and habitual course, was satisfactory presumptive evidence, that the board supplied by *Sessions,* was by his procurement.

The deposition of *Thomas Brown* was legally rejected.    He was a party to the suit, interested in the costs of it, and swearing in favour of his interest.    He, likewise, was the person

principally concerned in the cause on trial. The ground of the claim that the plaintiffs were endeavouring to support, was the combination of the offered witness with the other defendants to defraud his creditors, by their aid, and thus to withdraw his property from the state. To admit the testimony to repel the plaintiffs' claim, would be to suffer him to testify, peculiarly, in favour of his own interest. That a defendant in equity, made a party for form's sake, and *who is not concerned in interest,* may be examined, *saving just exceptions,* is readily admitted. 2 *Madd. Ch.* 316. 332. *Colchester* v. ———, 1 *P. Wms.* 595. *Piddock* v. *Brown & al.* 3 *P. Wms.* 288. But here, the witness was a party in interest; made such on account of substance, and not of form.

*Thomas A. Brown* was interested in the costs of suit; and the withdrawal of his action at law, after the bill brought, does not relieve him from this objection.

Whether the books of *Thomas Brown,* offered by *Fenner Brown,* one of the defendants, in order to sustain the consideration of his note, were duly rejected, is the only remaining question in the case. To understand the force of the objection to the testimony offered, it becomes necessary to state the facts particularly.

*Fenner Brown* claims a debt of 571 dollars, 23 cents, by promissory note, dated the 19th of *June,* 1830, executed to him, by *Thomas Brown.* The plaintiffs aver, that the above mentioned note was given without consideration, and pursuant to a fraudulent combination between the defendants and the said *Thomas,* made on the aforesaid 19th of *June.* No fraud, or conspiracy, or combination to defraud, is by the plaintiffs averred to have existed, anterior to this date. Then it was, and *not before,* that *Thomas Brown* is alleged to have become insolvent, and to have meditated the fraud in question, in order to preserve his property and withdraw it from the state. To carry the fraud, or conception of fraud, further back, we have no authority. If the plaintiffs had not proof, they had words at command; and even they do not pretend, that any fraud was contemplated, previous to this period.

In order to show, that the note in question was on valuable consideration and *bona fide,* it was proved, by *Fenner Brown,* that from *April* 1825, to the failure of said *Thomas,* a period of five years, the said *Thomas* had been in business as a merchant, and in carrying on a cotton manufactory; that during all this

Windham,
July, 1831.
_____
Dwight
v.
Brown.

period, the said *Fenner* had been in his service, in the aforesaid manufactory; and likewise, had boarded a number of his workmen. *Fenner Brown* then claimed, that the note in question was made to him in consideration of the aforesaid board and services, and of some smaller notes given to him for money loaned. On the other hand, the plaintiffs endeavoured to show, that nothing was due to the said *Fenner*, and that he had received divers supplies from the said store of *Thomas Brown*. Then it was, that the said *Fenner*, to prove that the note given to him was on valuable consideration, offered in evidence the books of *Thomas Brown*, consisting of day books, journals, and ledgers; and to show that they were regularly kept, and commenced in the spring of 1825, and contained an account of all the business of the said *Thomas* in his store and manufactory to the date of the note in question: Likewise, that among other things, during the whole of the said period, the above mentioned books comprised the accounts between the said *Fenner* and *Thomas*, in regular entries, from week to week, of the services performed by him, and of the supplies made; and that the books further showed adjustments and settlements from time to time, and the balance carried to the credit of the said *Fenner* in new account; and that the same was continued until the account was balanced, by the aforesaid note of *June* 1830. It was, however, admitted, that the settlements were not signed by either party, and that the only book-keepers were the said *Thomas* and his sons. The defendant, *Fenner Brown*, further offered to show, that the said books were the original books of *Thomas Brown*; and that they would demonstrate, on their pages, that the entries and settlements were made at the time they purported to bear date.

No evidence of a fraudulent conspiracy prior to the 19th of *June*, was offered, unless it was presumable from the facts that took place on that day and subsequently; that is, from the fraudulent combination and the measures in consequence.

On a general objection made to the admissibility of the books, they were not admitted in evidence. In this determination I cannot concur.

I assume it as incontrovertible, that there was no fraud, or purpose of fraud, anterior to the day, when the note in question was executed. None is proved, either expressly or by inference, unless the inadmissible supposition be indulged, that because *Thomas Brown* contemplated and practised a fraud,

on the 19th of *June*, 1830, therefore, he had contemplated it during his solvency, and had been adapting his books to carry it into execution for the five preceding years. So extravagant a presumption, as a mere fact, cannot be admitted. But on this subject the law is firmly settled. *Fraus numquam presumitur*. And the wisdom of the rule is demonstrated by this case. The court is called on, to presume, without proof, direct or circumstantial, and in opposition to the strong credibility attachable to mercantile books regularly kept, that, when no apparent motive to defraud existed, the purpose was indulged, and in a train of execution for five years, until it at length was consummated in the giving to *Fenner Brown* the note in question.

The enquiry, then, is simply this ; whether the credits to *Fenner Brown*, in the books of *Thomas*, with every mark of fairness and authenticity about them, are admissible evidence, to prove, that his note was on valuable consideration.

It is a rule of law, often and uniformly established, that the entries in the books of persons, *made against their interest*, are evidence of debt ; and stand on the same ground, as any other declarations made by them against their interest. 1 *Phill. Ev.* 191—195. 1 *Stark. Ev.* 69—76. Upon this principle it is, that we have admitted the declarations of *Thomas Brown*, recognizing his indebtedness to *A. & C. Steere*, the plaintiffs ; and if in this manner their debt may be sustained, why may not the debt of *Brown* to his son *Fenner ?*

It was adjudged in *Barry* v. *Bebbington*, 4 *Term Rep.* 514. a case entirely parallel with this, that entries, made by a steward, of money received by him from different persons, in satisfaction of trespasses, was evidence to show, that the right of soil was in his lord. The entries were made in a common day-book. The defendant objected, that the evidence, in its own nature, was inadmissible ; that it was *res inter alios acta ;* and that the entries were not subscribed by the steward. These are the precise objections made in the present case. Lord *Kenyon* stopped the counsel from replying. " We are now called upon," said he, " not to determine what weight the evidence ought to have in the cause ; but the *single question* here is, whether these entries be not admissible evidence. It is clear, that when a steward charges himself with the receipt of money, it shall be received in evidence before a jury, to show that such sum was received by him. But it has been object-

*Windham,*
*July 1831.*

*Dwight*
*v.*
*Brown.*

ed, that the steward's accounts should have been signed by him. If the entry be not in the hand-writing of the steward, undoubtedly it must be signed by him ; but here all these entries were made by the steward himself, and therefore they were evidence to charge him with the receipt of the money ; and if so, they should have been received in evidence on the trial of this cause."

To the same effect was the case of *Stead* & al. v. *Heaton* & al. 4 *Term Rep.* 669. An entry of the receipt of money was made, by the officers of a township, from the officers of another township. " It is clear," said Lord *Kenyon,* that one entry was properly admitted, because it charged the parish officers with the receipt of the money." And by *Ashhurst,* J. this strong expression was used : " According to all the rules of evidence, the last entry of payment by the parish officers, is clearly admissible."

In the 3d volume of *Woodeson's* lectures is cited the case of *Goodright,* lessee of *Harper* v. *Brokk* & *Dodd.* In this case, the rentals of the plaintiff's family had charged the steward for fifty years back, with certain sums of money. By the plaintiff they were offered in evidence ; and it was urged, that if they were admitted, the steward, by such insertions in his rentals, might get all the freeholds into the possession of his lord. But the court held, that fraud is not to be presumed ; and that the rentals were admissible to show the money received, and in what right it was received. To the same effect is *Warren* d. *Webb* v. *Greenville,* 2 *Stra.* 1129. recognized and commented on, by Lord *Mansfield,* in 2 *Burr.* 1072. and the case of *Higham* v. *Ridgway,* 10 *East* 109. In this last case, it was decided, that the written entry of a fact, made by a person against his interest, is evidence of the fact, as between third persons, after his death. " I think," said Lord *Ellenborough,* the evidence was properly admitted, upon the broad principle, that the entry made, was in prejudice of the party making it." And by *Bailey,* J. it was subjoined : " All the cases agree, that a written entry, by which a man discharges another of a claim, *or charges himself with a debt to another,* is evidence of the fact which he so admits against himself, there being no interest of his own to advance by such entry." Many more cases there are maintaining the same doctrine ; but I will merely refer to them. *Doe* v. *Robson* & al. 15 *East* 32. *Morewood* v. *Wood,* 14 *East* 327. n. *Doe* d *Bagalley* v.

*Jones,* 1 *Campb.* 367. *Price* v. *Littlewood,* 3 *Campb.* 288. *Haddow* v. *Parry,* 3 *Taun.* 303. *Holladay* v. *Littlepage,* 2 *Munf. Rep.* 316. 1 *Phill. Ev.* 192, 3. 1 *Stark. Ev.* 69. & seq.

Windham,
July, 1831.

Dwight
v.
Brown.

In this state, the charges on a person's book, of goods, services and money, are legal evidence, in case of his death, to sustain book debt ; and much more, are the credits made evidence against him. The entries on a regular book, here, stand on higher ground than the *memoranda* made at common law. Here the books of a merchant, or any other person, are the repositories of debt and credit, and are intended for the specific purpose of ascertaining the state of account between the parties. But in all events, the entries against the person's interest are equally evidence, with those made merely under the common law.

Several distinct objections have been made against the offered proof of the books of *Thomas Brown,* to each of which I will briefly reply ; premising only, that no further regard will be paid to the objection of fraud, which rests merely on possibility, and not on proof.

To the argument that *Thomas Brown* is *living,* and his books therefore are not the best evidence, I reply, that the case falls within the same reason, as if he were dead. He is a party to the suit, adjudged to be an admissible witness. So, likewise, all his book-keepers are parties, and incapable of testifying.

It has been said, that the entries are not evidence, in any event. I answer, they are written declarations against *T. Brown's* interest, so far as respects the credits ; and are admissible within all the cases.

It has been asserted, that the books, and particularly, the settlements, are *not subscribed.* But they are in *T. Brown's* hand-writing, and in that of his clerks ; and hence a signing was unnecessary.

If it is suggested, that the books are not brought home to the note ; I reply, the fact is misconceived. The books charge the note against *Fenner Brown,* to meet the balance found to be his due.

To the affirmation that they are *res inter alios acta,* it is a sufficient answer, that the point has often been decided to the contrary, and that this appears from the cases which have been cited. If a judgment were recovered, by *Fenner Brown,* against *Thomas,* and execution were levied on his land, would

the account be deemed *res inter alios acta,* in respect of a subsequent levying creditor ? It will not be pretended. In my judgment, it is impossible to make a solid distinction between the recognition of a person by receipt, bond, covenant, or by a credit on his book. The case of *Cook* v. *Swan,* 5 *Conn. Rep.* 140. sanctions the principle for which I contend. The whole court expressed a direct opinion upon a question made in that case, that the credit on the books of *Nathan Swan* was proof in favour of his son *Cyrus,* in an action in which the former was not a party.

I think there was no legal ground for rejecting the offered testimony ; and would, therefore, advise, that there be a new trial.

PETERS and BISSELL, Js. were of the same opinion.

DAGGETT and WILLIAMS, Js. dissented, thinking that the account books of *Thomas Brown* were not evidence for himself and the other defendants.

New trial to be granted.