AUGUSTUS H. KIMBERLY ET UX., APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, October Term, 1896.   ANDREWS, C. J., TORRANCE, FENN, HAMERSLEY and HALL, Js.

A non-expert witness, having detailed the facts and, without objection, given his opinion of the mental condition of a testator, may be asked on his direct examination if he had ever observed anything in the appearance, conduct or conversation of the testator to indicate any unsoundness of mind; and the weight or value of the answer may be shown upon cross-examination.

Where a will is claimed to be the product of an insane delusion harbored by the testator, and therefore void, it is the province of the court to instruct the jury what constitutes such a delusion.

In the case at bar the court instructed the jury that an insane delusion is a false belief for which there is no reasonable foundation, which would be incredible under the given circumstances to the same person if of sound mind, and concerning which the mind of the testator was not open to permanent correction through evidence or argument. *Held* that this definition was as accurate as could reasonably be expected or required, especially when read in connection with the other portions of the charge relating to testamentary capacity, in which the law of that subject was fully, clearly and unexceptionably presented to the jury.

An assignment of error to the effect that the charge of the trial court, taken as a whole, was not a full and fair presentation of the claims of the appellants, nor of the legal questions involved in the trial, is too general, and in violation of the rule of this court as to specific assignments of errors.

[Argued October 27th—decided December 22d, 1896.]

APPEAL from an order and decree of the Court of Probate for the district of New Haven, approving a certain instrument as the last will of Frederick H. Hoadley, deceased, taken to the Superior Court in New Haven County and tried to the jury before *Prentice, J.;* verdict and judgment sustaining the

will, and appeal by the appellants for alleged errors in the rulings and charge of the court.    *No error.*

The case is sufficiently stated in the opinion.

*William C. Case* and *William H. Ely*, for the appellants (contestants).

The question as to what constitutes an insane delusion is one of fact for the jury, not one of law for the court. It was, therefore, error for the court to give the jury any definition of the term "insane delusion." No two scientific men agree upon a definition, and in the rare instances where the courts have attempted to define the term, there is the same diversity of opinion. Schoul. on Wills, pp. 145, 146; Stearns' Ment. Dis., p. 89; Spitzka's Insanity, p. 24; 2 Hamilton's Syst. of Legal Med., pp. 39, 75; Redf. on Wills, 67; Taylor's Med. Juris., Chap. 62; *Dunham's Appeal*, 27 Conn. 201. The definition given by the court was incorrect, and the refusal to charge as requested by the appellants was erroneous. *Amer. Seamen's Friend Soc.* v. *Hopper*, 33 N. Y. 624; *In re Trich's Will*, 105 Pa. St. 586. The appellants also complain of the charge, because they say it is not a full and fair presentation of their claims of law, and of the facts, and that it is partial and strongly argumentative for the appellees. *Merritt* v. *Merritt*, 20 Ill. 80; *Dingman* v. *State*, 48 Wis. 485; Thompson's Charging the Jury, 81; *Thompson* v. *Force*, 65 Ill. 372; *Ludwig* v. *Sager*, 84 id. 99; *Thorp* v. *Growey*, 85 id. 612; *Morris* v. *Lachman*, (Cal.) 8 Pac. Rep. 799. The court erred in permitting the several questions recited in the record. These questions vary in language, but are the same in purport, and one and the same objection lies against them all. These witnesses were all non-expert. What their standard of sanity was, whether they had any standard, or any correct ideas whatever of what constitutes insanity, does not and cannot be made to appear.

*Samuel Fessenden* and *Henry Stoddard*, for the appellees (proponents).

The questions put to the non-expert witnesses and their

answers, were properly admitted. *May* v. *Bradlee*, 127 Mass. 414; *Hastings* v. *Rider*, 99 Mass. 622, 625, and cases there cited; *Barker* v. *Comins*, 110 id. 477; *Nash* v. *Hunt*, 116 id. 237, 251; *Baxter* v. *Abbott*, 7 Gray, 71, 79; *Robinson* v. *Adams*, 62 Me. 410; *Shanley's Appeal*, 62 Conn. 330; *Conn. Mut. Life Ins. Co.* v. *Lathrop*, 111 U. S. 620; *Ryan* v. *Bristol*, 63 Conn. 39; *Dunham's Appeal*, 27 id. 197; *Clinton* v. *Howard*, 42 id. 294; *Sydleman* v. *Beckwith*, 43 id. 9; *Quinn* v. *N. Y., N. H. & H. R. R.*, 56 id. 44. It was the duty of the court to tell the jury what an insane delusion was, and the definition given was unexceptionable. *Dew* v. *Clark*, 3 Ad. Ec. Rep. 79; *Waring* v. *Waring*, 6 Moo. P. C. C. 341–358; *Austen* v. *Graham*, 8 id. 514; *Banks* v. *Goodfellow*, 5 L. R. Q. B. Cas. 549; Buswell on Insanity, §§ 13, 14; 2 Hamilton's Legal Med., p. 35; Stearns' Ment. Dis., pp. 88, 89; Shelford's Lunacy, pp. 40, 293; Redf. on Wills, p. 87; *Middleditch* v. *Williams*, 45 N. J. Eq. 726; *In re White*, 121 N. Y. 406; *Haines* v. *Hayden*, 95 Mich. 354. Certainly the court should not have charged the jury that a mere false belief that influenced the testator in making his will, was an insane delusion. *Brown* v. *Ward*, 53 Md. 392. The claim that the charge did not set forth in detail and fairly the claims of the appellants, is altogether too general. It does not purport to review any question made or decided by the trial court.

FENN, J. This is an appeal to the Superior Court from an order and decree of the Court of Probate for the district of New Haven, approving an instrument purporting to be the last will and testament of Frederick H. Hoadley, of said New Haven. The case was tried to a jury, and the will was sustained.

The only claim made upon the trial by the appellants related to the testamentary capacity of the testator, and was that he was of unsound mind on November 2d, 1893, the time said instrument was executed. The five reasons assigned in the appeal to this court present three questions. The first relates to rulings upon evidence; the second to portions of

the charge to the jury; and the third presents, or was intended to present, objections to the charge taken as a whole.   We will consider these matters in the above order.

Upon the trial the contestants claimed and offered evidence to prove that the deceased, who at the time of his death, February 25th, 1895, was a bachelor about 49 years of age, a graduate of Yale, and by profession a physician, was a man endowed by nature with more than ordinary mental powers which he had improved by education and travel; that at some-time about 1878 or 1879 he began to make use of morphine or other kindred drug; that as the result of such use he in the course of time so undermined his physical and mental powers, that long before said will was made he became of unsound mind, and so continued to his death; that his mental impairment was indicated in part and characterized by insane delusions which he entertained concerning his sister, Mrs. Kimberly, the contestant, who was the only surviving member of his immediate family, and for whom he had previously had a strong affection, and respecting her conduct towards and treatment of him and others; that these delusions controlled his relations to his sister during his later years, and led him without cause to harbor towards her feelings of hostility and dislike, so that he was wholly alienated from her, and to make the will he did, ignoring her.

The proponents, on the other hand, claimed and offered evidence to prove that the testator, although upon occasions a user of morphine, was never a morphine *habitué*, and that he never did, as the result of its use, permanently impair, to any noticeable degree at least, either his physical health or mental powers; that he remained through life possessed of a strong, vigorous and well balanced mind; that he harbored no delusions touching his sister, and that the long estrangement between them (which was conceded) was not the consequence of insane imaginings or insane delusions, but of causes which were real, substantial and sufficient.

The contestants, as a part of their case and as tending to establish their said claim, offered evidence to show that the testator during the latter years of his life was careless and

even slovenly in his dress and personal appearance, whereas he had formerly been scrupulously neat and particular ; that his countenance was unnaturally pallid, his eyes glassy, his speech hesitating and incoherent, the muscles of face and hands nervous and twitching, and that he had a tendency to drowsiness, and even to fall asleep, in conversation.

All these things the proponents denied and offered evidence to disprove.   Among their witnesses for this purpose were Samuel T. Dutton, Mrs. Lena Neilson, Theodore S. Palmer, Mrs. Emily Sands, Mrs. J. K. Thacher and Mrs. C. H. Merriam.   These witnesses, in answer to questions by appellees' counsel, testified to their acquaintance with the testator, the duration of such acquaintance, the occasions upon which they had met him, the opportunities which they had had of observing him, his appearance, conduct and conversation upon such occasions, and to the facts within their knowledge which formed the foundation of the opinions afterwards expressed by them ; and then, in further response to inquiries from counsel for the appellees, and without objection, testified that in their opinion the testator was of sound mind.   Questions were thereupon asked of these witnesses by counsel for the appellees, and against the objection of the appellants that the questions were immaterial and irrelevant, as follows :  Of Samuel T. Dutton :  " State whether or not during this period you observed any indication of mental weakness ? "  Of Mrs. Lena Neilson :  " Will you state whether you ever observed in his appearance or manner or conduct anything which indicated mental unsoundness ? "   Of Theodore S. Palmer :  " Was there anything in his looks, talk, conversation, address, or anything about him that indicated any aberration of intellect in any way ? "  Of Mrs. Emily Sands :  " Did you ever at any time see anything to indicate that he was not of perfectly sound mind ? "  Of Mrs. J. K. Thacher :  " Was there anything in his apparel, his deportment, or conduct, or conversation, that indicated any unsoundness of mind ? "   Of Mrs. C. H. Merriam :  " During the entire period that you knew him, I should like to have you tell the jury whether there was ever any occasion when he showed to you

any incoherence in his conversation, anything that attracted your attention, indicating that he was either mentally unbalanced, or incompetent in any respect mentally?" To all of these questions the several witnesses answered in the negative. Counsel for the appellants duly excepted in each case.

The action of the Superior Court in admitting these questions was, we think, justified by what is held in *Shanley's Appeal*, 62 Conn. 325, 330. It is there said, concerning "mental unsoundness beginning at a certain time and indicated by certain changes in the appearance and conduct of the testatrix," that "as bearing upon this complex question, acquaintance with Mrs. Shanley before and after 1874, opportunities to see her after that date and to observe what changes there were in her conduct and appearance, to state them if there were any, *and if there were none to so state*,—were facts of the highest significance." But it is claimed by the appellants that the questions here asked confessedly called for the opinions of witnesses upon facts which were not given, and could not be given; that such witnesses were all non-expert, and that what their standard of sanity was, or whether they had any standard, or any correct idea whatever of what constitutes insanity, does not and cannot be made to appear. But it must be borne in mind that all these witnesses had, and without objection, testified to their acquaintance with the testator, embracing the details and particulars, as hereinbefore stated, and had then given their opinions, founded upon such recited facts, that the. testator was of sound mind. That thus far the testimony was admissible, no question has been made, or exists. The standard or idea of each witness as to sanity or insanity had sufficiently appeared to furnish a basis for that expression of opinion. And now, concerning these further questions, the same foundation supports them, and the very reason upon which the exception to the general rule, by virtue of which exception such opinion evidence from non-expert witnesses is received at all, applies with peculiar force; namely, "that the nature of the subject-matter is such that it cannot be reproduced or detailed to the jury precisely as it appeared to the witness at the time."

*Sydleman* v. *Beckwith*, 43 Conn. 9; *Shanley's Appeal, supra.*
The asking of these questions, calling for simply a bald
affirmative or negative reply, with full opportunity existing
for cross-examination to elicit how much in the answer was
matter of fact and how much opinion as to what would
indicate mental unsoundness, could not, we think, have
tended improperly to the prejudice of the contestants, and
did assist in presenting to the jury the most correct possible
reproduction of the subject-matter " as it appeared to the
witness at the time."

Coming now to the charge: The appellants requested the
court to say that " if the jury are satisfied that the testator
had become estranged from his sister, and hostile to her by
reason of false beliefs in regard to her conduct and feeling
toward him, which feeling of hostility remained with him
and influenced him in excluding her from his will, in favor
of strangers, then the will is invalid."

The proponents requested the court to charge that " speak-
ing generally, and as applied to this case, an insane delusion
is a false belief for which there is no reasonable foundation,
and which would be incredible under the given circumstances
to the same person if of sound mind, and concerning which
the mind of the decedent was not open to permanent correc-
tion through evidence or argument."

The court refused to charge as requested by the contest-
ants, and did charge as requested by the proponents, adding:
" A false belief, you should bear in mind, is not necessarily
an insane delusion. False beliefs are common to men. It
is only when these false beliefs are such as a reasonable man
would not under the circumstances entertain, that they
become insane delusions."

The request made by the appellants was manifestly incom-
plete and incorrect, for the reason indicated by the court in
the last quotation. The issue here was insanity, not mistake.
That, or false belief, was of no relevance or import except as
evidence tending to show insane delusion. But " false belief
is not necessarily an insane delusion; " and since it is not, a
charge that if entertained and acted upon it is sufficient to

render a will invalid for want of testamentary capacity, would be erroneous.

But in reference to the charge given, the appellants insist: first, "that it was outside the province of the court to give the jury any definition of the term 'insane delusion;'" second, "that the definition which the court did give is incorrect."

To the first of these claims we cannot accede. The standard or test to be applied in reaching the decision as to whether testamentary capacity existed in any given case, is always matter of law, and for the court to determine. It has been stated, as matter of law, by this court in many cases. Thus in *Comstock* v. *Hadlyme Eccl. Soc.*, 8 Conn. 254, 264, the charge to the jury was: " If the devisor knew what she was about, knew the consequences of what she was doing,—if she had sufficient capacity to make any contract,—she might make a valid will." Concerning such charge this court said: " There may be some difficulty in fixing a standard. The question for the jury was, whether the devisor had a sound and disposing mind. Although the charge may not add much to what would occur to the minds of discreet men, on that subject, yet if no improper direction has been given, I think there should be no new trial." *Kinne* v. *Kinne*, 9 Conn. 101, 102; *Dunham's Appeal*, 27 id. 192; *St. Leger's Appeal*, 34 id. 434, 448, 449; *Richmond's Appeal*, 59 id. 226, 244, 245. That delusion on some subjects is not *per se* incompetency, was held in *Dunham's Appeal*, *supra*, as matter of law. What is delusion, and when it would constitute incompetency, is manifestly equally a matter of law; *Hale* v. *Hills*, 8 Conn. 39, 43, where it is held that the right use of reason, and not knowledge of what a person is doing, is the test of competency. In *Mills' Appeal from Probate*, 44 Conn. 484, 486, it is said: " One form of mental incapacity is insanity; and a prominent and the most usual symptom of insanity is delusion." Courts constantly use the expression. In *Dunham's Appeal*, *supra*, p. 201, the language is: "The trite subject of insane delusion." What is meant by the expression used by the courts is surely for the courts to say, and courts

in other jurisdictions as well as standard legal writers have often said. Thus in *Taylor* v. *Trich*, 165 Pa. St. 586, 601, decided in 1895, the definition given in Redfield on Wills, 67, is approved; namely, that delusion is "a creature purely of the imagination such as no sane man could believe." In *Haines* v. *Hayden*, 95 Mich. 332, 354, decided in 1893, the following language of the trial court in the charge to the jury was approved: "A person persistently believing supposed facts which have no real existence, against all evidence and probability, and conducting himself upon an assumption of their existence, is, so far as such facts are concerned, under an insane delusion."

But the principal question on this branch of the case remains: Was the definition which the court gave correct? Were the instructions on this subject, taken as a whole, what the law requires that they should be—accurate, appropriate, sufficient; calculated to lead, guide and direct the jury in their deliberations and to their conclusions? The appellants most earnestly insist that the definition made and the instructions given were incorrect, and calculated to mislead and to prejudice their, the appellants', case. It is said first, that the term "insane delusion," in the sense in which it bears upon questions involving testamentary capacity, is not susceptible of precise definition. This is doubtless true to the extent to which the same statement would be accurate if made concerning many other terms, expressions and things, which, nevertheless, courts are constantly called upon to, and do, give instructions upon and definitions of; such as "reasonable care," "reasonable doubt," and even of the term "testamentary capacity" itself, and what constitutes it, either in general or as applied to a particular case. Of course in giving such instructions where "precise" definitions are impossible, only such an approach to precision as is possible is required. What that is concerning one term—"reasonable doubt"—which equally illustrates it as to other expressions, appears fully in an extended note to the case of *Burt* v. *State*, at page 566 of Vol. 48 of The American State Reports, where a very great number of cases upon the sub-

ject are referred to. It is also well illustrated as to "testamentary capacity" and " dementia," by the language used by the late CHIEF JUSTICE SEYMOUR in a charge to a jury, reported in the appendix of 39 Conn. 591, 595, quoted, approved and applied in *Richmond's Appeal from Probate, supra*, 242, 243: "If the prisoner's perception of consequences and effects was only such as is common to children of tender years, he ought to be acquitted." Concerning this kind of definition by analogy and illustration (which surely has precedent in the sacred scriptures, and "confirmation strong as proof of holy writ"), we said in *Richmond's Appeal:* " It may be correct, as the appellees claim, that there is no such thing as an average child, and that the mind and memory of a child is incapable of perfect measurement. This is true of almost any standard. It would be true of the standard which the law prescribes for the determination of reasonable care and prudence. It is nevertheless true that such a comparison carries with it, to an ordinary apprehension, a greater approximation to certainty than any general and abstract statement."

Viewed in the light of the above considerations, we think the language of the charge of the trial court of which the appellants complain, is not justly open to the criticism made upon it; that the statements that " an insane delusion is a false belief for which there is no reasonable foundation, and which would be incredible under the given circumstances to the same person if of sound mind, and concerning which the mind of the decedent was not open to permanent correction through evidence or arguments," and that it is only where "false beliefs are such as a reasonable man would not under the circumstances entertain, that they become insane delusions,"—are as accurate as in the nature of things and of language could reasonably be expected or justly required. We think that, standing alone, these instructions could not have prejudiced the appellants, and that when taken, as they should be, in connection with other portions of the charge upon the subject of capacity, the law bearing upon that part of the case was fully, clearly, and unexceptionably presented

to the jury. The court, in addition to the language above quoted, further said, among other things, not detached from but in connection with and as part of the statement from which the appellants quote the language to which they object: "From what has been said it will be seen that a person may be of testamentary capacity though he be at the time physically weak, and suffering from disease, and his memory be affected thereby. He may be competent to make a will, though he has not mental capacity sufficient for the management or transaction of business generally, and though he is not mentally capable of making and digesting all the parts of a contract. He may be capable of making a will although his mental powers have not their original vigor, and his intellectual faculties have lost some of their strength. But, while this is true, and it does not follow necessarily from the proved existence of these conditions that a testator is not of sound mind, as the law understands that term, yet these conditions, facts, and phenomena are matters to be considered and weighed, and may be very significant and important as showing, or tending to show, by themselves or in connection with other testimony, mental unsoundness or incapacity.

"In this connection I ought to add some more specific observations concerning the relations of insanity, or kindred states, to testamentary capacity. It goes without saying, of course, that one who is insane or imbecile cannot make a valid will; and that a will which is the product of insane delusions entertained by the testator cannot stand. The law, however, recognizes, what are matters of common knowledge, that insanity, mental aberration and mental incapacity, assume quite different phases in different persons, or under different conditions; that not infrequently it is a permanent or incurable condition; as, for instance, in the case of imbeciles and confirmed lunatics; that in other instances it is a temporary and transient state of mind, produced by sickness, injury, the use of intoxicants, noxious drugs, and other causes, apparent or unapparent; that sometimes the individual has alternating periods of mental soundness and unsoundness, the periods of unsoundness being more or less frequent, and more or less

lengthy ; that sometimes a person generally insane has lucid intervals, when the mind becomes clear, and there is a temporary reversion to mental capacity.   The rule is that when the mind is sound, when the insane or impaired condition has passed away, when the person is enjoying a lucid interval, the power to make a will exists, assuming of course, that in other respects the testator has the degree of mental capacity which I have described to you.

" One who is not insane generally may have insane delusions or hallucinations ; he may have a delusion, or delusions, as to one or more subjects, and be sane and wholly rational as to others.   Such delusions entertained by a testator might be such as not to affect in any way his capacity to make a will, or to transact ordinary business and the affairs of life. They might be such that they would in no way influence the testamentary act, or have any bearing upon, or affect, the provisions of the will attempted to be made.   In such case, if the testator possessed testamentary capacity in all other respects, the will would be valid, notwithstanding the existence of the delusions.

" On the other hand, if the insane delusion or delusions entertained were such that they would in any way enter into or affect the testator's act in making his will, or in any way influence its provisions so that the instrument would be in any respect the product of the insane delusion or delusions, and not of the testator's sound mind, the will thus produced would not be a good will.

" But after all has been said upon this subject there is no rule, I fancy, more clear, more intelligible, more easy of practicable application to all manner of cases, and no explanation more enlightening than is contained in the simple test I first gave to you, to wit, that one who at the very time he undertakes to make a will is possessed of sufficient intelligence and memory to fairly and rationally know and comprehend the effect of what he is doing, the nature and condition of his property, who are or should be the natural objects of his bounty, and his relations to them, the manner in which he wishes to distribute his estate among, or withhold it from

them, and the scope and bearing of the will he is making, has testamentary capacity, that is, the power to make a will.

"So, gentlemen, if Dr. Hoadley, at the time he sat down to execute the instrument before you, possessed this degree and kind of mental capacity, he was competent to make a will, and he was thus competent no matter what his mental condition may have been at times previous or times subsequent. His mental conditions both before and after, the character of any attacks of mental unsoundness, their durations or frequency, the nearness of any to the date of the will, the appearance of his recoveries, the existence of any insane delusions, and all such facts, are to be considered in so far as they may throw light on his then condition, and they may be important subjects for consideration; and they are to be considered in the light of any presumption of a continuance or recurrence of insane conditions which may reasonably be drawn from the case and its history. But the ultimate, the controlling question is as to his condition when he executed this instrument which purports to be his will, at that very time and none other. So where the claim is made of incapacity or mental unsoundness arising from the existence of insane delusions, the question is, did the delusion or delusions exist with the testator at the very time of the execution of the will, and, thus existing, affect or influence his action so that the will was the product of them, and therefore different from what it would otherwise have been."

The appellants' final reason of appeal is thus stated: "The court further erred in its presentation of the case to the jury in the following particular, because the charge of the court, taken as a whole, is not a full and fair presentation of their claims made on the trial of the cause, nor of the questions of law involved therein."

Concerning this "reason," the proponents say, and truly, that it is in violation of the rules of this court; being a mere general assignment of alleged error which does not purport to review any specific action of, or question made in, or decided by, the court below. But notwithstanding this we have carefully examined the charge in the light of the real

criticism made upon it by the appellants, as defined and shown in their brief, and the oral arguments in its support, which is that it is partial and strongly argumentative for the appellees. But we cannot think this is so. On the other hand, it has impressed us as singularly able and entirely fair. We detect nothing to indicate that the court did not do full and equal justice to the claims of both parties, and certainly nothing to show that it exceeded the limits of its power, as declared by this court in such cases as *First Baptist Church* v. *Rouse,* 21 Conn. 167; *Morehouse* v. *Remson,* 59 id. 392; *Setchel* v. *Keigwin,* 57 id. 473, 478; *State* v. *Rome,* 64 id. 329; *State* v. *Smith,* 65 id. 283.

There is no error.

In this opinion the other judges concurred.