## HENRY L. STURDEVANT'S APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, Oct. Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It is no ground for a new trial that improper questions were admitted, where the answers were such as could do no harm to the appellant.

Evidence that an elderly person had ulcers and varicose veins upon one limb in 1892, and that the latter disease ordinarily continued through life and increased in elderly people, is relevant to show the probable condition of that limb in 1893, and to rebut testimony that it was discolored by bruises caused by a kick, and had no ulcers upon it.

In his charge to the jury the trial judge is not bound to detail the evidence and claims of each party at equal length and with equal force or emphasis. It is his duty to call their attention to whatever he thinks especially worthy of consideration, and it is within his discretion to intimate to them the effect upon his own mind of any particular testimony to a material point.

A charge to the jury serves to call the attention of men unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case, and nothing more; and is not to be judged by the same standards as a statement of law carefully elaborated and deliberately pronounced by a court of last resort sitting *in banc*.

In the present case, which involved the validity of a will, the trial judge said to the jury that a will which made a just disposition of the estate would in itself be strong evidence of testamentary capacity, while one which turned the property into an unnatural channel would afford at least some presumption to the contrary. *Held* that this expression must be read in the light of other qualifying instructions, and that from the charge taken as a whole the jury could not have understood that they were bound as matter of law, if they found the will a just one, to deem that fact strong evidence of testamentary capacity.

The trial court refused to instruct the jury that the surviving brother and sister of the testatrix were the natural objects of her bounty. *Held* that inasmuch as there were others who also came under that description, a compliance with the request would have been misleading.

In determining testamentary capacity the presumption of sanity, although strictly speaking not in itself evidence, is of probative force in favor of the proponents of the will, and is to be cast into the scales and considered in ascertaining on which side the evidence preponderates.

Testamentary capacity consists in the ability of the testator, at the time of making his will, to know and understand the business in which he is engaged.

Argued November 3d, 1898—decided January 4th, 1899.

APPEAL from an order and decree of the Court of Probate for the district of Brookfield, approving and admitting to probate a certain instrument as the last will and testament of Emeline Sturdevant of Brookfield, deceased, taken to the Superior Court in Fairfield County and tried to the jury before *Robinson, J.;* verdict and judgment sustaining the will, and appeal by the contestant for alleged errors in the rulings and charge of the court. *No error.*

The reasons of the appeal from probate were want of testamentary capacity, undue influence, and that the pretended will was never in fact signed by the testatrix.

The finding showed the following facts: Upon the trial the

appellant offered evidence tending to show that the will in question was executed December 17th, 1894, when the testatrix was over eighty, and suffering from a disease which had prevented her from taking any appreciable nourishment for the preceding three months; that her mind was so impaired that she had no testamentary capacity, and was peculiarly susceptible to the influence of others; that the will was procured by undue influence exerted by her husband, Dr. S. Willard Oley and Eliza D. Sprague; that at all times prior to the date of the will she had been firmly resolved not to make any will, nor permit her husband to have any part of her estate, and had so repeatedly declared; that she died on December 26th, 1894; that she had always been on the most affectionate terms with her brother and sister, a Mrs. Ferris, who, with the representatives of a deceased brother, were her heirs; that her surviving brother (the appellant) was poor and deserving; that, when she married, her husband was twenty-two and she fifty; that he then was and had ever continued to be poor and shiftless, and never accumulated any property; and that he had been insulting, cruel and brutal to her in speech and treatment.

The estate left by the testatrix amounted to about $33,000. Her will made a substantial provision for her husband, and one for the appellant, from which he claimed and offered evidence to show that he should derive an income of less than $300 a year.

The appellant died after the probate decree, and left whatever interest he had in his sister's estate to his widow. She was produced as a witness in support of the appeal, and on cross-examination, in order to show her bias and that she knew the extent of her interest, was asked if it had not been agreed between her and her husband to postpone bringing the appeal to a trial until after Mrs. Ferris's death, so as to get half the estate. The question was admitted against the appellant's objection that it was irrelevant, and she answered, " No, sir."

A previous witness for the appellant had testified that a boarder in Mrs. Sturdevant's family had interviewed her (the

witness) in regard to the case and escorted her to the office of the appellant's counsel. On Mrs. Sturdevant's cross-examination she was further asked if she did not know that this boarder was very actively engaged in the prosecution of the appeal. This was admitted against the objection of the appellant, and she replied, " No, sir; I knew very little of his movements."

The appellant introduced two witnesses who testified that in August, 1893, the testatrix showed her leg to her sister and two others ; that it was bruised and black and blue from the ankle to the knee ; and that she said that her husband got it into that condition by kicking her, after they had had some words about money matters. One of the witnesses testified that she thought it was the right leg and that there were no ulcers on it.

The appellees in rebuttal produced Dr. Oley, the family physician of the testatrix, and asked him if he had seen her right leg at or prior to August, 1893. This question was admitted, against the objection of the appellant that it should be confined to the month of August. He replied that he had seen it in and before the spring of 1892, when he had treated it for ulcers and varicose veins ; that the veins then were varicose ; and that such a condition seldom or never disappeared in the case of old people, but usually increased. To the admission of each answer an exception was taken.

The instructions to the jury requested by the appellant, and the charge of the court, are sufficiently stated in the opinion.

*Goodwin Stoddard* and *Samuel Fessenden*, with whom was *Charles Sherwood*, for the appellant (heir at law).

*Louis K. Gould* and *Alfred B. Beers*, for the appellee (executor).

BALDWIN, J. The questions put to Mrs. Sturdevant, in order to bring out admissions showing her bias and active connection with the suit, having been answered in the negative, there is no occasion to pass upon their admissibility.

Evidence that the testatrix was afflicted upon one leg with ulcers and also by varicose veins in 1892, and that if the latter disease once fastened on persons of her age, it ordinarily continued through life and increased, was relevant to show her probable condition in this respect in 1893; and its admission was proper in rebuttal of the testimony that in the latter year this leg was discolored by bruises received from a kick, and had no ulcers on it. The appellant claimed that it should have been excluded, because not preceded by evidence that varicose veins might have a black and blue appearance similar to that produced by a bruise. As this objection was not taken in that form in the court below, it cannot be regarded here.

It is contended that the charge was partial and unfair. It appears that the evidence and the claims founded upon it by the proponents of the will were stated at much greater length than those of the contestants, and the appellant argues that they were put before the jury with greater force, and in a manner to indicate that the court was of opinion that they were entitled to more regard. The record does not disclose whether the proponents produced more or less testimony than the contestants; but the weight and importance of evidence have no necessary relation to the number of the witnesses produced. It is the duty of the trial judge to call the attention of the jury to whatever he thinks especially worthy of their consideration, and it is within his discretion to intimate to them the effect upon his own mind of any particular testimony to a material point. *State* v. *Fetterer*, 65 Conn. 287; *Wheeler* v. *Thomas*, 67 id. 577. Tested by these principles, there is nothing in the record which indicates that the charge was not a fair and impartial one. Of. the many objections to it which are specifically assigned, but one merits serious attention. After stating the claims of the contestants, and referring to the evidence in support of their contention that the will was so unreasonable as to indicate mental unsoundness, undue influence, or fraud, the court proceeded as follows: —

" I wish to say to you, that a will making a just distribution of an estate would be held in itself strong evidence of

testamentary capacity, while one turning the property into an unnatural channel gives at least some presumption to the contrary; but it must be remembered that, while the testatrix's neglect to make any provision in her will for certain next of kin, or other relatives, or any provisions but small amounts for such next of kin or other relatives, where the estate is a large one, are circumstances to be taken into consideration in examining the question of unsoundness of mind at the time of making the will, and in examining the question of undue influence and fraud, — it must also be borne in mind that a woman of lawful age has a right by law to make by will whatever disposition of her property she chooses, however unjust. If the testatrix had capacity to make a will, that capacity was sufficient to enable her to make any will, no matter how unjust or unreasonable its provisions may seem to others. A testatrix has a legal right to make a will unjust and unreasonable to the point of leaving out her relatives, whether next of kin or not, and her neighbors, sitting as a jury, have no right to alter the disposition of her property simply because they think she did not do justice to her family connections. Unless the will, on its face, carries clear marks of being the product of an unsound mind or of undue influence, its injustice, its unreasonable character alone, ought not to be the foundation of a verdict against it. Let me say to you in further explanation of this rule, that if a testatrix had not the requisite capacity of mind to make a will, or was unduly influenced to make it, the propriety of the disposition made by the will is a matter of no importance; but in determining whether or not the testatrix had capacity to make the will, or whether or not she was unduly or fraudulently influenced to make it, the provisions and the propriety of the provisions of the will may be and should be examined by you, and are factors of importance in those directio.

The remark that a just will would be held in itself strong evidence of testamentary capacity was an unguarded one, especially in view of the statement immediately following, that one turning the property into an unnatural channel gives

at least some presumption to the contrary. But no charge delivered by a trial court is to be judged by the same standards as a statement of law carefully elaborated and deliberately pronounced by a court of appeals, sitting *in banc*. It serves a very different office. It is to call the attention of twelve men, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case, and to nothing more. To make almost any rule of law intelligible to the ordinary juror it must be expressed in a few words. Qualifications and exceptions which the case does not call for are worse than useless, and those which are requisite it may be better to supply later, by a separate statement. A charge must be taken as a whole in determining its natural effect. The jury in this case were told at the outset that the court would explain the law of the case, with such observations upon the evidence as it might think proper for their information, but without any direction as to how they should find the facts, that duty devolving upon them alone. They were afterwards informed that where from the relation of the parties undue influence is to be presumed, it is a presumption of fact, only, and may be rebutted by any proper evidence; and that the provisions of the will should be considered and given such weight, in the determination of the issues, as under all the circumstances they might think them fairly and justly entitled to. After these instructions, the jury could not have understood from those which have been quoted that they were bound as matter of law, should they find the will a just one, to deem that fact strong evidence of testamentary capacity.

The request for an instruction that the surviving brother and sister were the natural objects of Mrs. Sturdevant's bounty, was properly refused. The descendants of her deceased brother who survived her, not to mention her husband, came also under that description, and it would have misled the jury to direct their attention in that manner to the brother and sister alone.

Exception is taken to that part of the charge in which the general presumption in favor of sanity is described " as one

of the proof factors," and in its application to the testamentary capacity of the testatrix is thus dealt with : —

"The burden of proof is in the first instance upon the proponents of this will, to show that the testatrix was of sound mind at the time of making this will. But the law, gentlemen, presumes every person to be of sound mind until the contrary is shown; and this presumption makes for the proponents of the will, and is of probative force in their favor, and must be considered by you along with the evidence offered by the proponents. This presumption must be cast into the scale with the evidence. If, gentlemen, using this presumption of sanity as of probative force, and, as suggested, you are satisfied by a fair preponderance of the evidence that Mrs. Sturdevant, the testatrix, had at the time of making this will the kind of capacity, understanding and mental strength, heretofore described to you, it will be your duty to find that she was of sound mind, and upon this issue render a verdict for the appellees. If, on the other hand, using this presumption of sanity as of probative force (and by probative force, gentlemen, I mean a force serving for proof), and as suggested, you are not satisfied by a fair preponderance of the evidence that Mrs. Sturdevant had at the time of executing this will the kind of mental strength and capacity which I have been describing to you, it will be your duty to find that she was not of sound mind, and your verdict upon this issue should be for the appellants, who are the contestants of this will."

It is a settled rule of administrative jurisprudence that a man should be assumed to be sane, in the absence of evidence to the contrary. In Swift's Treatise on Evidence (p. 139), published in 1810, this is described as a presumption of law. It has been said to be a general maxim in legal reasoning, having no peculiar relation to the law of evidence. Thayer's Preliminary Treatise on Evidence at the Common Law, 335. Be this as it may, it has a just relation to the law of trials, and in civil causes where sanity is in question and the evidence preponderates on neither side, ought to control the verdict. The presumption of sanity is not in itself evidence,

but it may serve the purpose and supply the place of evidence in setting up something which must be overcome by proof to the contrary. *State* v. *Smith*, 65 Conn. 283, 285; *Ward* v. *Metropolitan Life Ins. Co.*, 66 id. 227, 238. That may have probative force which is not evidence. Judicial notice, for instance, has it. "In its appropriate field, it displaces evidence, since, as it stands for proof, it fulfills the object which evidence is designed to fulfill, and makes evidence unnecessary." *State* v. *Main*, 69 Conn. 123, 136.

The Superior Court was right in charging the jury that the presumption of sanity must be considered along with the evidence offered by the proponents, and cast into the scales in determining on which side the evidence preponderated. Let us take the simplest case in which such a point may arise. The proponents of a holographic will prove the handwriting, and rest. The contestants introduce evidence of insanity. A metaphysician, addressing an academy of metaphysicians in terms of precision, might properly tell them that the evidence for the proponents was the existence of the testator, at the date of the will, and that in balancing this fact against the evidence of incapacity offered by the contestants, some weight should be given to the presumption which the law *prima facie* makes that every man's mind is sound. Such an instruction, however, would only confuse an ordinary jury. It is of no service to them, when called upon to pass on the question of testamentary capacity, to have their attention directed to the fact, which nobody disputes, that the man was alive when he signed the will, or to be told that this is to be considered as evidence, from which the law draws a certain inference. Any allusion to this intermediate step in proof can be safely omitted, and the presumption of sanity brought directly before them, without raising subtle distinctions as to its proper source. The important thing for the jury to understand in the case at bar was that the proponents had something to rely on beside the positive evidence which they had introduced to show testamentary capacity; that this was to be considered together with that evidence; and that it consisted in a presumption, recognized in law as based on

the general facts of life, which had probative force enough to turn the scale, if otherwise, taking into account all that either party had put in evidence, the balance should seem to them to stand equal. The charge, as given, sufficiently answered this demand. *Barber's Appeal*, 63 Conn. 393, 406.

Nor is there any ground for the objection that it gave an inadequate explanation of what is sufficient to constitute testamentary capacity. The jury were told that it was sufficient if the mind and memory of the testatrix were sound enough to enable her to know and understand the business in which she was engaged at the time when she executed the paper in question. This is the fundamental test, and it was stated in proper form. *Kimberly's Appeal*, 68 Conn. 428, 439.

There is no error.

In this opinion the other judges concurred.