SUSAN W. NICHOLS *vs.* GEORGIE B. WENTZ.

Third Judicial District, Bridgeport, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A testator is qualified to make a will if, at the time of its execution, he possesses sufficient mind and memory to enable him to know and understand the business in which he is engaged.

It cannot be said, as matter of law, that a person of weak intellect who was shown to have been insane twenty years before, and again twelve years after, the date of his will, was thereby incapacitated from making a simple testamentary disposition of his property.

The question of capacity remains one of fact for the trier upon all the evidence in the case.

Where an issue was determined by a clear preponderance of evidence, the opinion of the trial court as to which side had the burden of proof is immaterial.

An adjudication, in proceedings for the appointment of a conservator, that a person is incapable of managing his affairs, is not conclusive upon the question of his testamentary capacity twelve years before.

The finding in an earlier case may be incorporated by reference in the finding on appeal, without repeating its recitals.

A finding on appeal is admissible to show the scope of a judgment which is doubtful on its face.

The recitals of a finding made for purposes of appeal are not adjudicated facts binding upon the parties in a subsequent litigation.

The cross-examination of an attesting witness to a will is not to be restricted to what occurred at the time of its execution. But no advantage can be taken of such restriction on appeal, if the losing party afterwards examines the witness fully upon the matters previously excluded.

In the present case a witness stated that the testator was of unsound mind, and that one of his characteristics was to "break off in conversation"; and on cross-examination testified that a brother of the testator also did this. *Held* that on his redirect-examination he might be asked his opinion of the sanity of this brother.

A witness present at the execution of a will, having stated what he saw and heard, may be asked whether one upon whom the testator relied performed any act or made any statement indicating coercion or an attempt to influence the testator; it being impossible to detail fully the facts upon which the conclusion of the witness is based.

Argued November 1st—decided December 15th, 1905.

APPEAL by the plaintiff from the refusal of the Court of Probate for the district of Fairfield to admit to probate a certain written instrument as the last will of Samuel W. Nichols, deceased, taken to and tried by the Superior Court in Fairfield County, *Roraback, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Stiles Judson,* for the appellant (defendant).

*Alfred S. Brown* of New York, and *Goodwin Stoddard,* for the appellee (plaintiff).

HALL, J.   The testator, Samuel W. Nichols, died in 1903, sixty-nine years of age, unmarried, leaving a will executed December 11th, 1890, containing but two provisions: one giving all his property, absolutely, to his brother Alexander and his sister Susan W. Nichols, in equal proportions, and upon the death of either before that of the testator, to the survivor ; and the other appointing said devisees respectively executor and executrix of the will.   Said Susan W. Nichols is the proponent of the will, and appealed from the decree of the Court of Probate refusing to approve the will. Georgie B. Wentz, a niece of the testator, contests the will and opposes its admission to probate.

The testator and his brothers and sisters, Alexander, George, John, William, Charles, Effingham, Susan W. and Maria, were the children of Samuel and Susan N. Nichols. Said Susan N. Nichols died in 1872, and by her will gave, upon the death of her husband, which occurred in 1880, to eight of her children, not including Charles, as tenants in common, two pieces of real estate in the city of New York, one known as the Maiden Lane and Liberty Street property, hereafter referred to as the Maiden Lane property, and the other as the Cedar Street property ; to John, Susan W. and Maria, the homestead at Greenfield Hill in this State ; and charged each of her six sons, who were such devisees, with the payment of $2,500 when they should become entitled to the income of the property devised to them, such sum of $15,000 to be held by George, Effingham, William and Alexander in trust for the support of Charles during his life, and, upon his death without issue, to distribute the unexpended residue among his surviving brothers and sisters.

One of the brothers having conveyed his interest in the Maiden Lane and the Cedar Street properties to another of the brothers, the remaining seven tenants in common, in March, 1877, united in a conveyance of said properties, subject to the life estate of their father and to said charge of $15,000, to George, Effingham, Alexander, Susan W. and Maria, as joint tenants, who, in 1882, conveyed the same properties through an intermediate conveyance to Effingham,

Alexander and Susan W. as joint tenants, subject to said charge of $15,000, the consideration named in said deeds being a nominal sum and other good and valuable considerations.    In 1888 said three joint tenants conveyed the Cedar Street property to the Mutual Life Insurance Company of New York for the consideration of $80,000, and in 1902 Susan W., who by the death of Alexander and Effingham had become the sole owner of the Maiden Lane property, sold it for $140,000.    By conveyances from John and Maria, Susan W. became in 1885 the sole owner of the Greenfield Hill property.    Charles died in November, 1892, in a retreat for the insane, and in the following month his six brothers and two sisters signed a document, which was duly recorded, acknowledging payment of their respective distributive shares of said $15,000, and releasing the trustees from liability respecting it.

The testator studied law and was admitted to the bar of New York prior to 1858, in which year he became an inmate of an insane retreat, where he remained until 1869, when he was discharged, improved.    Thereafter, until near the time of his death, he lived at Greenfield Hill, with the family, consisting of Susan W., Alexander and John, and, during a considerable portion of the time, also of William and Effingham and their families.    The premises upon which they lived consisted of about two acres of land with a house upon it, until 1894, when twenty-five acres of adjoining land were purchased by Susan W. and a new house built upon it.    The testator and his brother John continued, of their own choice, to occupy the old house, taking their meals in the new one at the table with the rest of the family.

Respecting his manner of life and deportment during this time, the trial court finds these facts : The testator presided at the table, was gentlemanly and refined in his deportment, affectionate in his treatment of his brothers and sisters, and neat in his person and attire and in the care of his room. He occupied himself with gardening, transacted business intelligently, read the daily papers and current magazines, the books in his father's library, and periodicals relating to

farming and gardening, and discussed intelligently and interestingly the daily events, and the subjects of which he had read. During the winter he spent much of his time in New York at the home of one of his brothers, remaining there several months at a time, always going to and about the city unattended. The household bills were paid by Susan W., or by Effingham or Alexander, and the testator was never charged anything for his support. His resources consisted of a legacy from his father of $5,000, which he lost in speculative investments.

In 1890 the testator began to talk about receiving his share of his mother's estate, and on the 10th of December of that year went to the office of Effingham, who was a lawyer in New York and had general charge of the family property and financial matters, and met him and Mr. Brown, the family attorney, by appointment, and discussed with them the amount which he should receive as his share. The Cedar Street property had then been sold for $80,000, and the Maiden Lane property was then valued at $60,000. There was an indebtedness from the testator to Effingham which the latter proposed should be canceled, and that the testator should further receive certain railroad bonds which Effingham then had as the consideration of a release of his interest in his mother's estate. On the following day the testator stated the number of said bonds which he claimed, to which Effingham assented, and the testator thereupon executed a release to Effingham, Alexander and Susan W. of all his interest in his mother's estate, for the stated consideration of $11,265, made up of the value of said bonds, and said indebtedness of the testator to Effingham, with interest to that date, of $1,265. The testator thereafter received the income from these bonds until he loaned the certificate of deposit of the trust company which held them, which certificate he never again recovered. It did not appear that the testator received any other consideration for said deeds and releases of his interest in his mother's estate, or any other payment of his share of the rent of the Maiden Lane property, amounting to $4,000 or $5,000 a year, than said

sum of $11,265 and the care and support which he received from his brothers and sisters.

On said 11th of December, 1890, after signing said release, the testator went into a room apart from Effingham and duly executed the will in question, which was produced and read and explained to him by said Brown, and had been prepared in accordance with the previously expressed intention of the testator, and of the execution of which and of his settlement with Effingham he subsequently informed several members of his family.

Thereafter the testator continued the same course of life without any apparent change until March, 1902, when the defendant Georgie B. Wentz applied to the Court of Probate for the appointment of a conservator over him, alleging in her petition that from mental derangement he had become incapable of managing his affairs. The Court of Probate denied the application, but upon an appeal to the Superior Court a conservator was appointed in January, 1903. The appeal from that judgment to this court, entitled *Wentz's Appeal*, is reported in 76 Conn. 405. After having testified in those proceedings, upon being subpœnaed as a witness by this defendant, the testator failed mentally and physically until in May, 1903, it became impossible to take care of him at home, and he was removed to a sanitarium where he died in the following September. He left little estate of value. John, Maria and Susan W. are the only living children of said Samuel and Susan N. Nichols.

The said Georgie B. Wentz is a daughter of William Nichols by his first wife, who was divorced from him in 1870, and the defendant has since lived with her mother; and the relations of herself and her mother with the brothers and sisters of her father have not been friendly. The conservator so appointed upon her application commenced an action against Susan W. Nichols, which was pending at the time of the testator's death, for an accounting and for a restitution to the testator of his interest in said New York real estate.

Upon these facts the trial court held that the testator, at

the time he executed the will in question, possessed sufficient mental capacity to make said will; that he was not induced to make it by the undue influence of Effingham and Susan W. Nichols, as alleged in the defendant's reasons for contesting the will, and reversed the decree of the Court of Probate refusing to admit said will to probate.

Assuming, for the moment, that no mistake was made in the rulings upon evidence, the facts found fully justify the decision of the trial court, unless a different conclusion was compelled by the judgment in *Wentz's Appeal*.

The fundamental test of the capacity of the testator, to make the will in question, is whether his mind and memory were sound enough to enable him to know and understand the business in which he was engaged when he executed the instrument claimed to be his will. *Sturdevant's Appeal*, 71 Conn. 392, 401. The fact that he was insane prior to 1869; that he again became so after his niece brought him before the courts in 1902–3 in the proceedings for the appointment of a conservator over him; that he was always of weak intellect, and never fully understood the purpose and effect of the family arrangement by which the New York property was conveyed to certain of his brothers and sisters as joint tenants in 1877, or of the deeds and releases which he signed, furnishes no legal reason why he might not have been found to have had sufficient capacity to make this will on the 11th of December, 1890. *Kimberly's Appeal*, 68 Conn. 428, 438–440. The will is a very simple one, and carries upon its face no evidence that it is the product of an unsound mind. It disposes of all the testator's property by a single provision. The two devisees are a brother and sister of the testator with whom he had lived, and by whom he had been cared for during most of his life, and are two of the three joint tenants to whom the New York property had been conveyed by the other brothers and sisters. The history of the testator's life, and the circumstances under which the will was made, as narrated in the finding, indicate sufficiently clearly that when the testator executed his will he understood what property he was possessed of; that he was making a disposi-

tion of it to take effect after his death ; and that he appreciated to whom he was giving it, and to whom he ought to give it.

The facts are entirely consistent with the conclusion that there was no undue influence exercised over the testator. It does not appear that Effingham could have received any benefit from the will as it was made, or that Susan W. Nichols attempted in any way to induce the testator to make such a will, or was present when it was made or executed, or had any knowledge of it until afterward. Having found that it was shown by a preponderance of evidence that there was no undue influence, the court was not required to state upon whom it considered the burden of proof to have rested upon that question.

The adjudication in *Wentz's Appeal* was not conclusive upon the question of the testator's capacity to make this will. That question was not within the issues of that case, nor was it involved in the adjudicated facts.

It appears by paragraph 27 of the finding of facts, that the files and records of the Superior Court in *Wentz's Appeal*, including the finding of facts made in that case for the purpose of an appeal to this court, were admitted in evidence, against the plaintiff's objection, for the purpose of showing that the mental condition of the testator in January, 1903, was in issue, and what it then was, and as evidential of his mental condition when the will was executed. They are attached to and made a part of the finding in this case. It appears by the judgment-file in that case, dated January 8th, 1903, that Susan W. Nichols, the plaintiff in this case, appeared to defend said application, and that the court found the allegations of said application true, and appointed a conservator over the testator as an incapable person. The following is a part of the finding of facts in Wentz's Appeal, made by the trial judge in that case for the purpose of an appeal to this court : "Said Samuel (W.) Nichols has, ever since an early period of his life, been mentally unsound in varying degrees. . . . He was insane and an inmate of an insane asylum for a considerable number

of years, seven to ten, prior to 1872. Since 1872 he has been, for the most part, orderly and tractable, but during all of said time he has been and still is incapable of understanding or managing business or property affairs of any consequence, intricacy or importance. . . . Neither John nor Samuel are wasteful or spendthrifts; they are capable of doing and managing the petty, ordinary details and affairs of their every day lives in the circumstances in which they are now placed; they are not capable of managing any matters involving any business responsibility or judgment, or such affairs as may be involved in attempting to set aside any conveyance herein referred to, or in bringing or conducting suits for an accounting in connection therewith."

As these particular facts were a part of the finding in Wentz's Appeal, which had been made a part of the finding in this case, it was unnecessary that they should be repeated as a part of paragraph 27, as requested by the defendant.

The trial court, having ruled that it was conclusively decided by the judgment in *Wentz's Appeal* that the testator, by reason of mental derangement, was on the 8th of January, 1903, incapable of managing his affairs, and was then a proper subject for a conservator, was not required to rule specifically upon the defendant's claim that the judgment in *Wentz's Appeal* was an adjudication that the testator was incapable of making a will on that date. If that judgment were to be regarded as in effect such an adjudication, the judgment in the present case, that the testator was of sufficient mental capacity to make a will in 1890, does not conflict with one that he was incapable of making one thirteen years later.

The trial court properly declined to make any specific ruling upon the claim of the defendant, that the adjudication in *Wentz's Appeal* of the testator's mental unsoundness in 1903, coupled with the fact that there was no change in his mental condition between said date and the date of the execution of the will, established his incompetency at the latter date. Upon the facts before us the trial court properly refused to find that there had been no such change.

One of the defendant's reasons of appeal to this court is that the trial court erred in holding that that part of the findings of facts in *Wentz's Appeal* above recited " was not, as to the extent and nature of the testator's mental derangement, or as to the period of its continuance, binding upon the court in the case at bar." It does not appear that the trial court so ruled, or that such question was raised in the trial court; nor do we consider that there is any legal inconsistency between the facts found in *Wentz's Appeal* and the judgment rendered in the present action. As appears from the finding in this case, and from the transcript of evidence before us called " *Exhibit F.*," the portion of the finding in *Wentz's Appeal*, above referred to, was received in evidence only for the purpose of showing that the mental derangement of the testator in January, 1903, was the foundation of the judgment then rendered in that case, and that was the purpose for which it was offered. It was admissible, assuming that the judgment itself was doubtful on its face, to show the scope of the judgment, by showing that the subject of inquiry and adjudication was the mental incapacity of the testator to manage his affairs, and not his inability to do so for other reasons. The facts in that case not made a part of the judgment or of the record, but found only for the purpose of enabling an appeal to be taken, are not adjudicated facts, binding upon the parties to this action, assuming the parties to be the same in both proceedings. *Corbett* v. *Matz*, 72 Conn. 610, 612; *Kashman* v. *Parsons*, 70 id. 295, 304; *In re Premier Cycle Mfg. Co.*, ibid. 473, 480. We are unable to see that the trial court failed in any respect to give the proper evidential effect either to the finding of facts or to the judgment in *Wentz's Appeal*, which was manifestly a proceeding to procure the appointment of a conservator over the testator upon the ground that he was mentally incapable of bringing or conducting suits for setting aside said conveyances and for an accounting, and was so regarded by the court that tried it.

Upon the opening of the case in the trial court the plaintiff called as a witness Alfred S. Brown, one of the witnesses

to the will, who, having testified to what occurred when the
will was executed, was asked this question by plaintiff's
counsel: " At the time of the execution of the will by Mr.
Nichols, was he of sound and disposing mind and mem-
ory ? " The witness replied, " He was." Upon cross-
examination counsel for the defendant asked the witness
how many years he had been identified in business or pro-
fessional relations with the testator, and what opportunities
he had had for forming an opinion as to the soundness of
his mind, and to state what his experience with the testator
had been. Upon objection by the plaintiff these questions
were excluded by the court, apparently upon the ground
that the cross-examination must be limited to what occurred
when the will was executed. In answer to further questions
by the defendant, the witness stated that his opinion as to
the sanity of the testator was based upon his conduct at the
time of the execution of the will ; that he had known the
testator a great many years, and that his previous acquaint-
anceship might possibly have influenced his judgment that
he was of sound mind at the time he executed the will.
One of the grounds upon which these questions were claimed
by defendant was to test the good faith of the witness in
stating that the testator was of sound mind when he exe-
cuted the will.

There was error in the exclusion of these questions.
Prominence is justly given to the attesting witnesses of a
will, who are supposed, from the fact that they were present
when the will was executed, to have had the means and op-
portunity of judging of the testator's capacity. *Field's Ap-
peal*, 36 Conn. 277. While the testimony of these witnesses
in the opening of the case is usually confined to the appear-
ance, conduct and surroundings of the testator at the time
of the execution of the will, and the opinions of the wit-
nesses based thereon (*Barber's Appeal*, 63 Conn. 393, 401),
it does not follow that the cross-examination of these wit-
nesses must be limited to inquiries as to what occurred when
the will was executed. The contestants of the will may, by
proper inquiries upon the cross-examination of such a wit-

ness, seek to elicit facts indicating that the opinion expressed by him is not a candid one ; that it is entitled to little weight because of bias or interest arising from his previous relations with the testator, or the part which he may have taken in preparing or procuring the execution of the will ; or that such opinion is not based upon what the witness observed when the will was executed, but either wholly or in part upon his previous acquaintance or experience with the testator. To elicit such facts it is frequently necessary to inquire on cross-examination regarding occurrences before the time of the execution of the will. Such cross-examination of a witness to the will, who in the opening of the case has given his opinion regarding the sanity of the testator as based upon what he observed when the will was executed, is very commonly and properly deferred, upon the understanding that the witness is to be recalled for that purpose at a later stage of the trial ; but for the court to order such postponement against the objection of the contestants might, if the witness was not afterward produced by the proponents, be a sufficient ground for a new trial. The exclusion of the questions referred to is not a sufficient ground for a new trial in the present case, since the defendant afterward fully examined the witness Brown upon the subjects of said inquiries.

Two of the defendant's witnesses who had testified that the testator was of unsound mind, and that one of his characteristics was " to break off in conversation " when talking, and who, when asked on cross-examination if other members of the family had not the same characteristic, had replied that John had, were asked by the defendant upon redirect-examination what, in their opinion, was the mental condition of John when he manifested these peculiarities. These questions were excluded upon the plaintiff's objection.

They were admissible for the purpose of showing that the fact that John had the same peculiarity did not indicate, as implied by the cross-examination, that it might be a characteristic of a person of sound mind. The fact that the de-

fendant was afterward given a full opportunity to present, and did present, evidence as to the mental condition of John and of other brothers and sisters of the testator, renders the exclusion of these questions an insufficient reason for granting a new trial.

The witness Brown having testified to the conversations between the testator and his brother Effingham on the 10th and 11th of December, 1890, concerning the execution of the will, and the adjustment of accounts between them, and what was said at these interviews, and having testified, in answer to questions by the defendant, that the testator in certain matters deferred to the judgment of Effingham, the plaintiff was properly permitted to ask the witness whether there was any act or statement of Effingham indicating coercion or attempt to influence the testator; and the witness was properly permitted to answer that there was no suggestion of coercion. This question and answer were permissible upon the ground that the facts upon which the conclusion of the witness was based could not be fully detailed to the court as they appeared to the witness. *Kimberly's Appeal,* 68 Conn. 428, 432; *Sydleman* v. *Beckwith,* 43 id. 9.

We find no error in the other rulings complained of upon questions of evidence. They require no discussion.

The finding of facts was sufficient to enable the defendant to fully present all the questions of law she desired to have reviewed. There was no error in the refusal of the trial judge to make the requested corrections.

There is no error.

In this opinion the other judges concurred.