INEZ JACKSON ET ALS. *v.* CHARLES B. WALLER, EXECU-
TOR (WILL OF ELLA E. H. BROWN).

MALTBIE, C. J., HINMAN, BROWN, JENNINGS and ELLS, Js.

Argued October 10, reargued December 5, 1939—decided January 18, 1940.

*Frank L. McGuire,* with whom was *Francis F. Mc-Guire,* for the appellant (defendant).

*George C. Morgan* and *Arthur M. Brown,* with whom, on the brief, were *Charles V. James* and *Griswold Morgan,* for the appellees (plaintiffs).

Hinman, J. Ella E. H. Brown of New London died on April 17, 1937, leaving an instrument dated March 26, 1937, which was admitted to probate as her last will May 4, 1937. From this order and decree the plaintiffs appealed to the Superior Court, alleging lack of testamentary capacity and undue influence. After a protracted trial the jury returned a verdict sustaining the appeal on the ground, as revealed by answers to interrogatories, that the testatrix was not of sound mind at the time of the execution of the will. The defendant appeals from the denial of his motion to set aside the verdict, also from the judgment, assigning errors relating to the charge and rulings.

In support of the appeal from the verdict the defendant advances a contention that, as there is no constitutional right to trial by jury of an appeal from probate of a will, but it is conferred by statute (Statutes, 1835, p. 211; General Statutes, 1930, § 5624; *Kinne* v. *Kinne,* 9 Conn. 102) the court, in testing the justification for a verdict in such a case, has greater latitude than in the ordinary jury case, including a right to pass upon the weight of the evidence. We do not find in the statement in *Kinne* v. *Kinne,* supra (p. 106), that notwithstanding the intervention of a jury in such cases "it still remains the duty of the court to endeavor to preserve something like uniformity of decision," or elsewhere, warrant for this attempted distinction, as to interference with verdicts, between these and other jury cases. The Legislature in granting the right of trial by jury in cases where there is no such constitutional right may grant it "to the same extent as such right exists at common law; or . . . with restrictions, either as to the nature or extent of the right, . . . or may make the verdict purely advisory." 1 Page, Wills (2d Ed.) § 572. As our statute imposed no such restrictions but provided

for trial by jury "in the same manner as is provided for the trial of other issues in fact" (Statutes, 1835, supra) the general rule applies and this accords with our practice in will contests. As recently as *Caldwell* v. *Danforth,* 124 Conn. 468, 471, 200 Atl. 577, we have affirmed the rule to be that the weighing of evidence and determining the credibility of witnesses is the exclusive function of the jury, if they acted reasonably their conclusion upon these points is final, and the verdict may be set aside only where its injustice " 'is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption, or partiality.' " If upon the evidence there is room for a reasonable difference of opinion among fair-minded men the verdict of a jury may not be set aside. *Maroncelli* v. *Starkweather,* 104 Conn. 419, 422, 133 Atl. 209. "This court has nothing to do with the weight of the evidence, 'unless the verdict is so manifestly against the evidence as to make it apparent that the jury adopted some wrong principle in their deliberations, or that their minds were not open to reason and conviction, but from some cause or other were improperly or unduly influenced.' " *Petroman* v. *Anderson,* 105 Conn. 366, 371, 135 Atl. 391.

A vast amount of evidence—about thirteen hundred pages of printed record—was introduced on the trial. The attentive perusal which we have accorded it reveals a large volume of evidence tending to support the claims of the plaintiffs as to the decedent's testamentary competency, as well as a profusion in conflict therewith, and we cannot say that the jury, especially under the charge as given, might not legitimately have come therefrom to the conclusion at which they

arrived. *Caldwell* v. *Danforth*, supra, 471. Therefore the appeal from the verdict may not be sustained.

Mrs. Brown, the testatrix, was in her seventy-sixth year at the time of her death. Her next of kin are six cousins, including plaintiffs Inez Jackson and Mabel Allen. She was the widow of Sheriff Sidney A. Brown, who died on March 10, 1930. The findings of claims of proof of the respective parties are very voluminous but we deem it necessary only to summarize very generally those which appear most material to consideration of the assignments pertaining to the charge. The plaintiffs offered evidence that after her husband's death Mrs. Brown became morose and despondent and from 1935 began to deteriorate mentally and physically and that although her mental condition remained sound enough as late as December 4, 1936, to permit her to make the will (prior to the one here in question) which she did on that date, it thereafter become worse so that "for several months before her death she was suffering from senile dementia and arteriosclerotic psychosis;" that on January 15, 1937, she became ill with influenza, during that illness was irrational, and did not recover until the end of the month; her attending physician at that time discovered that she had a large abdominal growth, which he believed to be cancerous but she declined treatment for it. Prior to January cataracts had formed on both eyes and her vision was limited. The plaintiffs further claimed to have proved that on March 17th she suffered a cerebral hemorrhage, was confined to her bed on and after March 20th and was in a coma or comatose condition March 21st, and thereafter until her death; that on March 21st, 24th and 25th she was visited by cousins to whom she made no response when they spoke to her; that on March 25th when the defendant had been informed that Mrs. Brown wanted to see him as her

attorney, he assumed, regarding a will, he requested her attending physician to see her and report to him her condition, which the doctor did; that the defendant then visited her and she directed him to make several changes from the provisions in the last prior will (of December 4, 1936) including a change from a bequest of the residue to the plaintiffs to one to Nelson Brown and his wife and a $5000 bequest to P. L. Harwood, as to whom she had previously expressed antipathy; that when the defendant returned the next day, March 26th, with the draft of the will prepared in accordance with her instructions she directed further changes, including alteration of the provisions for the Browns to a gift of $15,000, and bequeathed the residue to two New London charities; that after the draft had been changed accordingly she signed it in the afternoon of the same day, being raised in bed, the will resting on a book placed on her knees, and in signing she wrote three l's in Ella, annexed an additional H to her middle initials and wrote two r's in Brown. Their final general claim of proof was that on March 26th "by reason of senile dementia, cerebral arteriosclerosis, cancer of the uterus, infection from influenza and cerebral hemorrhage, Mrs. Brown was not of sound mind."

The claims of proof of the defendant included the following: That during all the time after her husband's death Mrs. Brown managed her own affairs with the help of her lawyer and of Harwood as her business adviser, her property consisting of real estate, mortgages, and cash in banks, at the time of her death aggregating about $162,000, and she was thrifty and careful in business matters. While her eyesight became dim she read the papers until near the end of 1936, and thereafter they were read to her; she continued to write checks until December, 1936, and up to and including March 17, 1937, signed all checks

drawn on her account; that on that day she went over her household bills and signed checks for them, that she was interested in social matters and continued so until April, 1937; that she never showed symptoms of any illness or disease except an attack of erysipelas about fifteen years prior to her death until the attack of influenza on January 15, 1937; that in the latter part of January she had recovered sufficiently to leave the bed, and later fully recovered from the influenza, continued to receive callers, chatted with guests about the news of the day and general subjects and attended to her business affairs; that on March 18th or 19th she went to bed but had callers every day with whom she talked intelligently; that on March 25th when her attorney called she spent more than an hour with him, telling him what disposition she wanted to make of her property and the changes she wished to have made in the former will. Again on the morning of the 26th she spent considerable time discussing with him the further changes she had decided upon and reasons therefor. Eleven persons who saw and talked with her at various times during the day and evening of March 26th testified as to conversations with her and their opportunities to observe her, and all believed her to be of sound mind on that day. At 8 o'clock p.m. on March 27th, the day after the signing of the will, her breathing became irregular and she seemed stuporous and so continued on the 28th but thereafter that condition disappeared and she received and talked intelligently with visitors and continued of sound and disposing mind up to April 9th, when she became stuporous and died on April 17th, having for two days previous been suffering from hyperstatic terminal pneumonia.

Of the numerous assignments alleging error in the charge several relate to claimed failure of the trial

court to sufficiently focus the attention and consideration of the jury upon the testatrix's mental condition and capacity on the very day (March 26th) and time of the execution of the will. The fundamental test of the testatrix's capacity to make a will is her condition of mind and memory at the very time when she executed the instrument. *Nichols* v. *Wentz,* 78 Conn. 429, 435, 62 Atl. 610; *Sturdevant's Appeal,* 71 Conn. 392, 401, 42 Atl. 70; *Kimberly's Appeal,* 68 Conn. 428, 439, 36 Atl. 847; 1 Schouler, Wills, Executors & Administrators (6th Ed.) § 97. While in determining the question as to the mental capacity of a testator evidence is received of his conduct and condition prior and subsequent to the point of time when it is executed, it is so admitted solely for such light as it may afford as to his capacity at that point of time and diminishes in weight as time lengthens in each direction from that point. *Canada's Appeal,* 47 Conn. 450, 463; *Cullum* v. *Colwell,* 85 Conn. 459, 465, 83 Atl. 695.

It is apparent from the foregoing summary from the finding that while the claims of proof on behalf of the plaintiffs included such an alleged gradual and protracted change from capacity toward incapacity as is the reason for the latitude as to time allowed in admitting evidence in such cases (*Dale's Appeal,* 57 Conn. 127, 143, 17 Atl. 757), most important and perhaps decisive contentions related to alleged sudden and pronounced changes in the testatrix's condition in close proximity to the point of time at which the instrument was executed, especially whether, as the plaintiffs claimed, she had a few days previously fallen into and was then in a "coma or comatose condition" or, as the defendant claimed, she continued competent and that it was not until the evening of the day following (March 27th) that her condition became "stuporous" and then only temporarily. In this situation it

was unusually and particularly essential that the jury be given clearly to understand that the ultimate and controlling question was as to the mental condition and capacity of the testatrix when she executed the instrument, "at that very time and none other." *Kimberly's Appeal,* supra.

In *Dick* v. *Colonial Trust Co.,* 88 Conn. 94, 95, 89 Atl. 907, the charge included the following instruction: "This mental capacity of which I have spoken to you is the mental capacity . . . at the time when the will was made. This is important for you to consider, because it may be that a person may be of unsound mind at one time, before, possibly, the making of the will, and may be unsound of mind at some time subsequent to the making of the will, and yet may be at the time the will was made of sound mind. And it is her capacity at the time and at that very time when she made this will, when she signed it and executed it . . . at that time is the time when you are to find as to her capacity. The controlling question is as to Mrs. Munson's condition when she executed this instrument. . . . at that very time and none other. Evidence or testimony as to her condition of mind or body at the time before the execution of the will, or after the execution of the will in question, is of importance only as it may throw light on her condition at the time she actually executed the will." 143 Supreme Court Records & Briefs 115. The situation upon the claims of proof in the instant case, even more pronouncedly than in the *Kimberly* and *Dick* cases, was such as to call for some similar instruction. "It cannot be doubted that the admission of testimony as to acts and conduct of the testator at times before and after the will was made is often calculated to produce a false impression on the minds of jurors, or at least have undue influence over them, unless very care-

fully guarded." *Harris* v. *Hipsley,* 122 Md. 418, 430, 89 Atl. 852. There is equal or greater necessity of guarding against similar consequences accruing from a finding, from such evidence, of lack of testamentary capacity at some time other than that at which the will was actually executed. The adequacy of a charge is not to be tested by technical refinements applied to it upon deliberate reading in the printed record but by the probable effect produced, by its delivery, upon the minds of the jury. The charge as given contained only general statements such as that the requirement was capacity "at the time of the execution of the instrument." This may well have been insufficient to concentrate the consideration and decision of the jury upon the mental capacity of Mrs. Brown at the very time when she signed the instrument, as would a specific statement (as illustrated in *Dick* v. *Colonial Trust Co.,* supra) making clear that the controlling question is the testatrix's capacity on the very day and at the time of execution and that the sole bearing and effect of evidence of her condition at other times is for such indications as it may afford of her condition at the time when she actually executed the will, in which respect the charge was also deficient. We regard failure to charge more specifically on this point as error prejudicial to the defendant.

Error is alleged in failing to discuss sufficiently the evidence in the case. The trial court made no attempt to review in any detail the evidence adduced by the opposing parties, limiting its comment in this respect to a brief general statement of the respective claims therefrom. It appears, however, from the charge as well as the memorandum of decision on the motion to set aside the verdict that the evidence had just been exhaustively reviewed by counsel in argument and the trial court deemed that it would be "bringing water to

the river" to do more than briefly "portray the general picture of what each side maintains." The ultimate issue on this phase of the case was single and relatively simple. We cannot say that the defendant was deprived of the benefit of the claims properly made as to facts established by the evidence or that the discretion reposed in the trial court as to the extent to which it should comment was abused so as to constitute material error. *Heslin* v. *Malone,* 116 Conn. 471, 477, 165, Atl. 594; *Morosini* v. *Davis,* 110 Conn. 358, 363, 148 Atl. 371.

The finding discloses that Dr. Lawson, a New London physician of admitted qualifications, who attended the testatrix in her January illness, and on March 18th, 21st, 23d, 26th, 27th and subsequently until her death and was one of the witnesses to the questioned will, was the only physician who testified in the case other than medical experts who answered hypothetical questions. Complaint is made of a statement in the charge that he "testified only as do ordinary witnesses concerning facts that have come to their attention through seeing Mrs. Brown," whereas it was said of the other physicians that "they have testified solely as experts, as persons having special knowledge and skill in their profession." Careful reading of the portion of which this is a part discloses that the purpose, apparently, was to draw a distinction between witnesses testifying from personal observation and basing opinions thereon and those called as experts and predicating opinions on facts assumed in a hypothetical question. The statement as made, however, may well have had an effect, as the defendant claims, of harmfully detracting from appreciation by the jury not only of such special weight as Dr. Lawson's own position and standing as an expert might afford, but also of that ordinarily attaching to the opinion of an attending physician who

has had special opportunity for skilled observation of a testator as to his mental as well as physical condition. *Ward* v. *Brown,* 53 W. Va. 227, 44 S. E. 488, 500; *Hastings* v. *Rider,* 99 Mass. 622, 625; 1 Schouler, op. cit., § 97; 3 Chamberlayne, Evidence, 2684. Except as above noted, the application of the relevant principles of law involved to the facts claimed to have been proven appears to have been stated adequately. Other assignments pertaining to the charge develop no material error.

After having placed in evidence a considerable number of checks signed by the testatrix, dated from January 8th to March 17, 1937, the defendant offered a lot consisting of seventy-five to one hundred of her checks drawn during 1936. Although these were not objected to by the plaintiffs the court excluded them of its own volition, apparently, from the colloquy preceding the ruling, on the ground of immateriality. As these checks were not marked for identification they are not properly before us and we are unable to determine whether or not the exclusion was prejudicial. *Smirnoff* v. *McNerney,* 112 Conn. 421, 422, 152 Atl. 399; *Roberti* v. *Barbieri,* 105 Conn. 539, 543, 136 Atl. 85.

Error is assigned in admitting the opinion of a medical expert because of claimed defects in the hypothetical question propounded to him. The first objection is that it was not entirely impersonal in form, names of certain relatives and legatees of the decedent being mentioned in the course of it. Assuming, although not deciding, that, as is common practice, such a question should be impersonal, as far as practicable, it seems to us that mention of these few names was necessary to a clear statement of the assumed facts and did not amount to a valid ground for excluding the question. The second defect alleged is that the question contained only claimed facts selected by the

plaintiffs as suiting their own purposes "without stating all the facts in evidence." This does not render the question legally objectionable. While such a question should contain only assumptions of fact which counsel can fairly claim that the evidence in the case tends to prove, it is not improper because it includes only a part of the facts of which the evidence might be claimed to afford proof. *Barber's Appeal*, 63 Conn. 393, 409, 27 Atl. 973; *Hall* v. *Sera*, 112 Conn. 291, 297, 152 Atl. 148; *Gruskay* v. *Simenauskas*, 107 Conn. 380, 384, 140 Atl. 724; 1 Wigmore, Evidence (2d Ed.) § 684; 20 Am. Jur., § 788.

Objections to the opinions of lay witnesses as to testatrix's condition of mind, on the ground of insufficiency of their opportunities for observation, went to weight rather than admissibility and the relation of the weight to be accorded such an opinion to the extent of such opportunities was adequately explained in the charge. An optometrist who made an examination of the testatrix's eyes, for the purpose of fitting glasses, which disclosed the presence of cataracts was competent to express an opinion as to the progressiveness of the condition. Other assignments which were pursued require no discussion. We feel constrained to hold, however, that the errors found in the charge are of sufficient potential prejudice to the defendant to require a retrial.

There is error and a new trial is ordered.

In this opinion MALTBIE, C. J., and ELLS, J., concurred.

BROWN, J. (dissenting). I disagree with the conclusion of the majority that there is reversible error. As is clear from the opinion, this is not a case where an erroneous instruction upon any important issue was

given. The sole substantial error found is the trial court's failure to specifically discuss in its charge the significance of properly admitted testimony concerning the testamentary capacity of the testatrix and the lack of it, as of other than the very time of the execution of the will. Reversal is predicated upon the court's failure to make sufficiently clear to the jury that the ultimate and controlling question was as to the mental condition and capacity of the testatrix when she executed the instrument, that is, in the words of the opinion, "at that very time and none other." To my mind the charge as given, read in the light of the whole record, completely refutes this conclusion, for it contains explicit and reiterated instructions strictly confining the jury's finding upon the issue of the testatrix's capacity to the very time of the execution of the will. It was, in short, correct in law, adapted to the issues and sufficient for the guidance of the jury. No request to charge was made by the defendant. The failure to give the specific instructions which the opinion would require did not therefore constitute error. *Schmeiske* v. *Laubin,* 109 Conn. 206, 211, 145 Atl. 890; *Distefano* v. *Universal Trucking Co.,* 116 Conn. 249, 253, 164 Atl. 492. However apropos that portion of the charge from *Dick* v. *Colonial Trust Co.* quoted in the opinion might have been in the present case, I cannot agree that in the absence of any request, the court's failure to include it converted what was otherwise a correct and adequate charge into one fatally misleading and defective. The fact that in that case this court did not hold the charge quoted essential in such a case, but merely that the charge upon mental capacity as there given, attacked on the appeal, was sufficient, lends strength to my conclusion.

The finding reveals that evidence as to the testatrix's capacity during a considerable period before and after

the execution of the will was offered by both parties. Under the rule of law which neither side questioned at the trial, the only possible significance of this evidence was to throw light upon her mental capacity at the time when she executed the will. As the opinion points out, the record shows "that the evidence had . . . been exhaustively reviewed by counsel in argument. . . ." No objection appearing of record, the necessary inference follows that the voluminous relevant evidence was fully argued by counsel upon this issue as defined and restricted by this rule of law. With this mutual acceptance of the rule by the parties and its proper application thus emphasized before the jury, the case is not one where conflicting claims of counsel required the specific instruction of the *Dick* case for the jury's guidance.

The charge as given made clear that however broad the field explored by this evidence of the testatrix's mental capacity, the sole question for the jury's determination was what that capacity was at the very time when she executed the will. Although the court did not charge in the language of the *Dick* case, its recital of the conflicting claims of the parties sufficiently gave effect to the rule there stated. Thus it charged that the plaintiffs claimed that "on March 26, 1937, Mrs. Brown was in a weakened condition both mentally and physically," and then after rehearsing the various claimed afflictions, ailments and "mental deterioration" between 1930 and that date, concluded: "Hence they claim from the foregoing as well as other facts alleged to have been proven, that on March 26th Mrs. Brown was not of sound mind." And then referring to the claims of the defendant the court went on to say that he claimed "that Mrs. Brown was perfectly competent on that day to make a will," and that Mrs. Brown's various afflictions "had no material effect upon her

mental capacity, which throughout her days until a week before her death was one of soundness." In addition, twice before and four times after this, in the course of the charge, the court expressly instructed the jury that the testatrix's capacity must be determined as of the time of the execution of the will. And finally in response to the last of these instructions, the jury answering in writing an interrogatory which the court had submitted, expressly found that the testatrix was not "of sound mind at the time of the execution of the will of March 26, 1937." The test of sufficient instructions is not whether they are "as accurate . . . upon legal propositions as the opinions of a court of last resort," but whether they fairly present "the case to the jury, in such a way that injustice was not done under the rule of law to the legal rights of either litigant." *Pratt, Read & Co.* v. *New York, N. H. & H. R. Co.*, 102 Conn. 735, 740, 130 Atl. 102. In my judgment the court's instructions in question met this test.

I further disagree with the suggestion in the opinion that the trial court's reference to the testimony of Dr. Lawson "may well have had an effect . . . of harmfully detracting from appreciation by the jury" of the weight properly to be attributed to his testimony as attending physician of the testatrix. The context of the charge makes sufficiently clear that when the court referred to him as having testified "as do ordinary witnesses," the effect of its statement was restricted to directing the jury's attention to the difference in nature between his testimony based upon his personal observation of the testatrix, which was elicited without resort to any hypothetical question, and that of the other doctors, all of whom testified as expert witnesses only, predicating their testimony entirely upon hypothetical questions propounded to them.

Under these circumstances this instruction of the court does not constitute even the make-weight for error intimated by the majority.

In my opinion there is no error.

In this opinion JENNINGS, J., concurred.