[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 9015
This is an appeal from the denial of admission to Probate for the District of New Haven of a Will dated August 15, 1996 of Albert Rosen. On June 4, 2001, the Probate Court denied the admission on the grounds that there is insufficient evidence to admit the Will on the issue of Competence. (Exh. 7)[1] The reasons for the appeal are as follows:[2]
The defendant Marc Rosen (Marc) denies the allegations and as a Special Defense asserts that on August 15, 1996 the decedent Albert Rosen was the subject of undue influence from outside parties when he executed the Will dated August 15, 1996.
 Burden of Proof
In a Will contest the proponent of the Will in this case Marlene Rosen (Marlene), the widow and named executrix under the August 15, 1996 Will has to prove the issue of testamentary capacity and due execution whereas the opponent of the Will, in this case Marc, son of the decedent and widow Marlene bears the burden to show undue influence.
In Jackson v. Waller, 126 Conn. 294, 301 the Court stated:
 "The fundamental test of the testatrix's capacity to make a Will is her condition of mind and memory at the very time when she executed the instrument. Nichols v. Wentz, 78 Conn. 429, 435 62 A. 620: Sturdevant's Appeal, 71 Conn. 392, 401, 42 A. 70; Kimberly's Appeal, 68 Conn. 428, 439, 36 A. 847; 1 Schouler, Wills, Executors Administrators (6th Ed.) § 97. While in determining the question as to the mental capacity of a testator evidence is received of his conduct and condition prior and subsequent to the point of time when it is executed, it is so admitted solely for such light as it may afford as to his capacity at that point of time and diminishes in weight as time lengthens in each direction from that point. Canada's Appeal, 47 Conn. 450, 463; Cullum v. Colwell, 85 Conn. 459, 465, 83 A. 695."
The burden of proof in disputes over testamentary capacity is on the party claiming under the Will (citations omitted) and that the testator has mind and memory sound enough to know and understand the business upon which he was engaged at the time of execution. (Citations omitted) The ultimate determination whether a testor has measured up to this test is a question for the trier of fact. See Stanton v. Grigley, 177 Conn. 558, CT Page 9016 564.
The defendant argues that Marlene has failed to establish that the decedent had the mental capacity because he did not know at the time (1) what his estate consisted of (2) to express how he wanted his estate distributed and (3) to read or understand the Will that was prepared for him.
The Will of August 15, 1996 was prepared by Norman Hurwitz (Hurwitz) an attorney admitted to the Connecticut Bar in 1958. Hurwitz draws about 50 to 60 Wills per year who testified he did not have any notes in his file about the assets of the decedent and if he knew the estate was larger he would have considered trusts. Hurwitz's understanding was to draw simple mirror Wills giving all assets to each other if surviving the other by 90 days. (Exh. A). Nothing in notes list any assets. Hurwitz was to prepare what he called vice-versa documents. Hurwitz had no recollection if Rosen read his Will or not. Husband and wife coming to his office together are never separated and he discusses their issues together. Hurwitz could not testify if Rosen was able to read and had no recollection of Rosen reading his Will. Hurwitz's general practice was to give photostatic copies of the Willss to his clients and he goes through the Will paragraph by paragraph. Hurwitz's only recollection of Rosen was he could ambulate and that it was obvious he had a stroke. Rosen held onto his wife's arm to walk. Hurwitz could not recall if Rosen read the Will. Hurwitz did not have a recollection whether he went over the Rosen Will paragraph by paragraph in this case. All that Hurwitz was able to testify to was his best recollection because he had no notes.
Hurwitz had other matters with the Rosens but could not recall whether it was before or after the execution of the Will. All Hurwitz's verbal conversations were with Marlene Rosen. Marlene Rosen called about drawing up the Wills. Hurwitz had nothing in his notes that Rosen had given him a prior Will he had drawn in New York in 1993. Hurwitz had business with the Rosens for about four or five years after the Will of Rosen.
Hurwitz also prepared as he did customarily Powers of Attorney for both the Rosens. Hurwitz testified that it was necessary for him to form an opinion as to capacity and he felt that Rosen was unable to verbally communicate with Hurwitz.
Hurwitz was unable to go through his usual procedures that he follows in drawing up Wills. In the Rosen case Hurwitz tried to make sure what Marlene Rosen was relating to him about the Rosen Will was understood by Rosen. All that Hurwitz could recall was that Rosen nodded his head as he went through the paragraphs in affirmation. When asked by Hurwitz if Rosen knew what Hurwitz was doing Rosen nodded his head affirmatively. CT Page 9017 Hurwitz could not recall if Rosen said yes or no to any paragraphs.
Marlene Rosen testified that Albert had his stroke April 23, 1996 and two weeks later he entered Rehabilitation at Gaylord and that he came home May 30, 1996. Marlene testified that Albert Rosen understood everything and knew what he wanted to say. Marlene was the executrix under the Will (Exh. 1) dated August 15, 1996. Marlene testified he had difficulty retrieving words.
Marlene had requested a copy of their Wills from their lawyer in New York, Gerald Rosenblum (Rosenblum) (Exh. B) executed March 25, 1993. Marlene stated she and Albert were upset over the Wills drawn by Rosenblum because they contained Trusts so she called Attorney Hurwitz.
Marlene said that during the time Hurwitz was reading the Will (Exh. 1) that Albert was listening. Marlene on cross-examination admitted that Albert's stroke affected his brain. After Gaylord rehabilitation he had a speech therapist.
Marlene testified that Albert had considerable assets when they went to Attorney Hurwitz's office. He owned a home in New Haven, a condo in Florida, a gas station in New York that is the subject matter of a pending law suit in New York between the late Albert Rosen and his son Marc and a lawsuit against family partners which resulted in a substantial later settlement of monies which were distributed to Albert, Marlene and their sons. The defendant argues had Hurwitz known of the assets that it is reasonable to assume and from the testimony of Hurwitz, who had no notes to reflect any assets, that he would have prepared more than simple Wills leaving everything to Marlene. Also from Albert's bad experience with his mother's estate and lack of planning resulting in the tax consequences that Albert was unhappy with, he would have provided that information to Hurwitz. This court can only conclude from the evidence and argument that Albert did not have sufficient knowledge to know the business at hand. (See City National Bank TrustCo. Appeal 518, 521.)
The testimony of Elyse Berman (Berman) the speech language pathologist who treated Rosen after his stroke is very significant in this case. Berman testified Rosen had a lot of difficulty at the time immediately following the stroke. Berman saw Rosen for about six months after the stroke starting in November 1996 to March 1997. She agreed with the therapist report (Exh. D) that Rosen suffered from receptive and expressive aphasia. Rosen had verbal apraxia which is the loss of ability to sequence words and sentences. He had moderate defects with auditory conynelieusion. Contrary to the argument of the plaintiff that he had defective hearing aids which contributed to his condition. According to CT Page 9018 Berman, Rosen had gone through the spontaneous recovery stage after a stroke and when she was him in November 1996 he had improved somewhat. Berman testified that Rosen had difficulty with problem solving such as to affect telling of time and unscrambling letters. Both parties agreed that when Berman saw Rosen in the year 2000 for a deposition in the lawsuit between him and his son Marc that his condition at that time was too remote from the date of the execution of the Will in 1996. Rosen may have known what he wanted to say but he had difficulty getting the words out. His condition in 2000 was the same as that of 1996 through 1997 although by the year 2000 he was able to compensate. Berman testified he could not read or answer more than one word sentences. Berman stated his answers as yes would mean no and vice versa. Rosen tried to answer correctly and the questions would have to be asked two to three times and eventually he might give correct answers. Berman testified as to Rosen's cognitive skills that he was not able to do simple arithmetic or unable to keep a check book.
Rosen was able to sign his name from long term memory. Rosen was unable to remember one word terms five minutes after they were said show he had lost his short term memory.
Berman in her reexamination in the year 2000 makes substantially the same finding as those made in the year 1996.
Valerie J. Denny witness to the Will who had been employed at the Hurwitz law office did not have any recollection of Rosen. Her job is to go in and sign the document. She never speaks or asks client about the Will. Denny was unaware that Rosen had a stroke and would have made inquiry if known.
The court concludes from all the evidence adduced at trial that the proponent of the Will executed August 15, 1996, has failed to meet her burden of proof to establish that Rosen had the requisite testamentary capacity to make his Will at that time.
The court need not address the special defense of undue influence having decided the issue of testamentary capacity.
Accordingly, the appeal is dismissed and judgment is entered in favor of the opponent to the Will dated August 15, 1996.
 Frank S. Meadow Judge Trial Referee